[No. A104009. First Dist., Div. Three. Sept. 6, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
NICOLAS QUINTANILLA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1., 2., 4., 5., and 6.

## COUNSEL

Heather MacKay, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—In this case, a defendant challenges instructions permitting the jury to consider charged domestic violence offenses as evidence of criminal propensity in connection with other domestic violence charges joined for trial. In the published part of our opinion, we hold such instructions are improper, but amounted to harmless error in this case.

After a jury trial, Nicolas Quintanilla was convicted of false imprisonment, inflicting injury on a cohabitant, forced sexual penetration, witness intimidation, assault with force likely to cause great bodily injury, criminal threats, and rape. The court sentenced him to a term of 19 years four months. On appeal, he contends: (1) the witness intimidation conviction must be reversed because he was charged with and convicted of attempting to dissuade a witness from testifying (Pen. Code, § 136.1, subd. (a)), an offense for which there was no supporting evidence and on which the jury was not instructed (instead, it was instructed on the crime of attempting to dissuade a witness from making a police report under Pen. Code § 136.1, subd. (b)); (2) the evidence did not establish the requisite specific intent for forced sexual penetration; (3) the propensity instructions given by the court violated his due process rights; (4) the court improperly restricted defense counsel's cross-examination of the victim; (5) hearsay statements by the victim were erroneously admitted under the spontaneous declaration exception; and (6) the imposition of upper terms and consecutive sentences violated the *Blakely* rule (*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531].)

In the unpublished portion of our opinion, we agree the witness intimidation conviction must be reversed. Otherwise, we affirm.

## BACKGROUND

Isabel J. had dated Quintanilla in El Salvador in the 1980's. In 1988 she came to the United States and married Michael J. In 1990, during a visit to El Salvador, she met Quintanilla and promised to help him come to the United States. He came in 1991, and Isabel rented him a room and found him a job. They had an on-and-off dating relationship. In 2001, Isabel and Michael separated, and she began seeing Quintanilla again.

Isabel went to Los Angeles at the end of 2001 to visit her mother and sisters for the holidays. When she returned in January 2002, Quintanilla accused her of seeing lovers on the trip. He shook her and struck her in the face and shoulders with his fist, calling her names. Afterward he apologized and said he would never hurt her again. At the end of trial, the prosecutor dismissed a domestic violence charge arising from this incident because there was no proof Isabel and Quintanilla were cohabitants when it occurred.

Isabel moved with her two daughters to an apartment in San Francisco in February or March of 2002. Quintanilla moved in with them a couple of weeks later. Isabel testified that on May 8, 2002, Quintanilla again became jealous and hit her repeatedly in the face, accusing her of sleeping with other men. The jury acquitted Quintanilla on a domestic violence charge arising from this alleged incident. Isabel also testified that on another occasion before May 14, Quintanilla called her from a bar and asked her to join him. She was tired and refused. He came to the apartment, accused her of hiding someone, threatened her with a knife, looked in vain for someone hiding in the apartment or the backyard, and eventually apologized to her. The jury was unable to reach a verdict on a criminal threat charge arising from this incident.

Quintanilla's convictions arose from events occurring on May 14, 2002. That afternoon, he called Isabel at her job in San Mateo and demanded that she come home in 30 minutes. Isabel refused, telling him she had something else to do. At 4:00, she met with her lawyer, Donald Bloom, regarding her child custody dispute with her husband Michael. They discussed accusations Michael had made about Quintanilla and about Isabel's parenting. Bloom prepared a declaration based on this interview, which included the following statements: "My boyfriend [Quintanilla] is a decent person, not some molester or sex fiend like Michael. My boyfriend would never force me to do anything, unlike Michael, who would hold me down and virtually rape me when I told him I did not feel li[k]e sex or force me to perform sex acts on him that hurt me or made me feel bad."

Isabel left Bloom's office around 5:45. Bloom testified she was in good physical condition at that time. Isabel drove home and parked in the driveway of her apartment. She testified that as she approached the building's entrance gate, Quintanilla jumped on her back. Her daughters were still at the baby-sitter's house. Quintanilla took her keys, opened the gate, and forced her into the apartment against her will, holding her by the hair and the waist. Inside, he locked all the doors and began cursing her, threatening to beat her up and kill her, and accusing her of cheating on him. He hit her in the face, pulled her hair, and took a knife from the kitchen, holding it to her throat and telling her she did not deserve to live. After punching her many times around the head and shoulders, Quintanilla took Isabel into her daughters' room and disconnected the phone.

In the bedroom, Quintanilla continued beating Isabel, kicking her as well as hitting her with his fist. He slammed her head against the post of the bunk bed, removed her skirt and panties, and forced his fingers deep into her vagina, which Isabel testified was "very painful." He then smelled his fingers and told Isabel there was no doubt in his mind she was cheating on him. He beat Isabel for an hour or so, threatening to kill her, and to cut off her head and hang it on the wall. She thought she might die when he squeezed her throat so hard she could not breathe. Finally, she was able to calm him down.

Quintanilla pushed Isabel into the bathroom and ordered her to take a shower. She saw that he had thrown the telephone from her daughters' room and another from her bedroom into the toilet. After she showered, Quintanilla took her to her bedroom. She asked him to leave, but he repeatedly raped her at knifepoint, vaginally and anally. The assault stopped at around 11:00 that night.

Isabel told Quintanilla to leave, and eventually he took her car keys and left the apartment. Isabel took one of the phones from the toilet and tried to dry it with a hair dryer to call the police. Quintanilla returned in five minutes, however, and told her she had to come with him. He put his clothes into bags, grabbed Isabel by the shoulders, and took her to the car. Quintanilla drove to Oakland, arriving around midnight. He told Isabel she was going to spend the night with him in an apartment he was remodeling. However, he did not have a key, and drove instead to a friend's house, where he got out of the car. Isabel told him to take his clothes, which he did. She then slid into the driver's seat and drove off, as Quintanilla yelled at her to stop. She drove to a police station, stopping first at an apartment where Quintanilla used to live to ascertain the address so she could give it to the police.

Officer Mike Valladon was called to the downtown Oakland police station around 2:30 a.m., and interviewed Isabel. She was very upset, but Valladon

managed to take a statement, and had her injuries photographed. Around 6:00 a.m., Isabel was taken to the emergency room of San Francisco General Hospital. She was seriously bruised; the examining nurse testified her injuries were worse than the nurse usually found in domestic violence cases. Isabel was given two doses of morphine and, later, Vicodin. Sometime after 8:00 a.m. she was taken to a rape treatment center, where she was interviewed and examined. The nurse found her injuries "really consistent with the story she told me about what happened to her." Swabs were taken, which detected semen in Isabel's vagina.

Quintanilla was arrested on May 16. He admitted forcing his hand into Isabel's vagina to check whether she had had sex. He admitted hitting Isabel, but only three times. He claimed she had consensual intercourse with him, in an attempt to persuade him to stay with her.

On May 17, Bloom faxed Isabel the declaration he had drawn up based on his interview with her on the 14th. He told her he needed to file it quickly. Isabel testified that she only looked at the signature line, and after signing immediately faxed the declaration back to Bloom. Isabel later reconciled with Michael J., and was living with him and their children at the time of trial.

## DISCUSSION

1., 2.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *The Propensity Instructions*

■ Evidence of prior criminal acts is ordinarily inadmissible to show a defendant's disposition to commit such acts. (Evid. Code, § 1101.[1]) However, the Legislature has created exceptions to this rule in cases involving sexual offenses (§ 1108) and domestic violence (§ 1109).[2] Our Supreme Court has

---

[*]See footnote, *ante*, page 572.

[1] Further statutory references are to the Evidence Code, unless otherwise specified.

[2] Section 1109 provides, in relevant part: "(a)(1) Except as provided in subdivision (e) . . . , in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352. [¶] . . . [¶]

"(b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, in compliance with the provisions of Section 1054.7 of the Penal Code.

"(c) This section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute or case law.

held that section 1108 conforms with the requirements of due process. (*People v. Falsetta* (1999) 21 Cal.4th 903, 922 [89 Cal.Rptr.2d 847, 986 P.2d 182]) It has also ruled that CALJIC No. 2.50.01, an instruction explaining the application of section 1108, is proper. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012 [130 Cal.Rptr.2d 254, 62 P.3d 601].) California Courts of Appeal have followed these rulings to uphold the constitutionality of section 1109 (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1312 [97 Cal.Rptr.2d 727]; *People v. Price* (2004) 120 Cal.App.4th 224, 240 [15 Cal.Rptr.3d 229]) and the corresponding CALJIC instruction (CALJIC No. 2.50.02; *People v. Pescador* (2004) 119 Cal.App.4th 252, 261–262 [14 Cal.Rptr.3d 165]).

Quintanilla contends the trial court erred by modifying CALJIC No. 2.50.02, which instructs the jury on the inference of criminal propensity that may be drawn from the defendant's commission of *uncharged* domestic violence offenses, to permit the jury in this case to draw a propensity inference from other *charged* domestic violence offenses. We agree. Section 1109 was clearly intended to make evidence of uncharged domestic violence admissible in cases where it was not previously permitted. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1332–1334 [92 Cal.Rptr.2d 433].) The Legislature was careful to provide that evidence of other domestic violence offenses may be excluded when it is unduly prejudicial. Our Supreme Court relied heavily on a parallel provision in section 1108 when it upheld the constitutionality of that statute, which was the first to authorize the admission of propensity evidence. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 917–918.) Evidence of other charged offenses cannot be excluded, however, no matter

---

"(d) As used in this section, 'domestic violence' has the meaning set forth in Section 13700 of the Penal Code. . . .

"(e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."

Section 1101 provides: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

"(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

how prejudicial it may be. Without that safeguard, it is fundamentally unfair to allow the jury to infer the defendant's propensity to commit crimes of domestic violence from his commission of other charged offenses.

In the proceedings below, the court told counsel it was planning to instruct the jury on "evidence of other domestic violence," and asked the prosecutor if all the domestic violence Isabel had accused Quintanilla of committing had been charged in the information. The prosecutor reminded the court that he had dismissed the first Penal Code section 273.5 charge due to lack of evidence of cohabitation. Otherwise, however, the prosecutor agreed that all the other-crimes evidence pertained to charged offenses. The court tentatively decided to instruct on the "inference of disposition" authorized by section 1109 in regard to all incidents of domestic violence, charged and uncharged.

The next day, as discussions resumed, defense counsel objected to any instruction under section 1109. Counsel conceded he expected Quintanilla to be convicted of the domestic violence charges because he had admitted physically assaulting Isabel. However, counsel believed a propensity instruction would be prejudicial to his client on the sexual assault charges. The court noted that no propensity instruction under section 1108 would be given on the sexual offenses, because there were no such offenses prior to May 14. The court also observed that the propensity instructions had been approved by the appellate courts.

However, the court said it intended to follow its usual practice of omitting the most prejudicial inference permitted by the instructions—that if the jury finds a criminal disposition based on other offenses, it may infer not only that the defendant "was likely to commit" the charged crimes but also that he "did commit" those crimes. The court said it would, at a minimum, delete the "did commit" language from the instructions. The court also proposed limiting the instruction so the jury would not be allowed to make any inferences about the sexual assaults, even though the statutory definition of "domestic violence" was broad enough to include those charges. The prosecutor readily agreed, saying he intended to argue the inferences that way in his closing argument.

Defense counsel objected, contending section 1109 had no application to "other crimes" that were charged offenses. The matter was taken up again the next week. The court said it would tailor the propensity instruction to make it broad enough to cover both charged and uncharged instances of domestic violence. It agreed to defense counsel's request to limit the instruction to the domestic violence charges—false imprisonment, assault, criminal threats, and perhaps kidnapping. Defense counsel maintained his objection that the statute did not permit charged offenses to be used as other-crimes evidence.

The relevant portions of the modified version of CALJIC No. 2.50.02 given by the court are as follows, with additions in bold and deletions stricken through:

"Evidence has been introduced for the purpose of showing that the defendant engaged in ~~an offense involving~~ domestic violence on **more than** one or more occasions ~~other than that charged in the case~~. . . . [¶] . . . [¶] If you find that the defendant committed a prior offense involving domestic violence on one or more occasions, you may but are not required to infer that he was likely to commit ~~and did commit~~ the crimes of which he is accused **that involve domestic violence, such as injuring a cohabitant, false imprisonment, assault or making threats of death or great bodily injury. You may not draw the inference that the defendant is likely to commit any other crimes charged in this trial**. However, if you find by a preponderance of the evidence that the defendant committed ~~a prior crime or crimes~~ **multiple acts** involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the **any** charged **domestic violence** offenses. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged ~~crime~~ **domestic violence offenses. Thus, in the commission of a prior act, domestic violence is not sufficient by itself to prove beyond a reasonable doubt that the defendant committed any charged offense. The weight and significance of separate incidents of domestic violence, if any, are for you to decide**."

The court similarly modified the preponderance of the evidence instruction pertaining to other-crimes evidence (CALJIC No. 2.50.1), as follows:

"Within the meaning of the preceding instruction **regarding inferences of a disposition to commit domestic violence**, the prosecution has the burden of proving by a preponderance of the evidence that a **the** defendant committed ~~crimes other than that for which he is on trial~~ **multiple domestic violence offenses**. You must not consider this evidence for any purpose draw an inference of a disposition to commit domestic violence unless you find by a preponderance of the evidence that the defendant committed ~~the other crimes~~ **acts of domestic violence on separate occasions**."

Quintanilla recognizes that California courts have upheld section 1109 and CALJIC No. 2.50.02 against due process challenges. Nevertheless, he contends the instructions given in his case violated his due process rights. He points out that in *Falsetta*, our Supreme Court relied on the trial court's discretion to exclude propensity evidence under section 352 as the crucial

factor meeting due process requirements. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 917–918.) Quintanilla protests he had no opportunity to object under section 352 because the other-crimes evidence was admitted to prove other charges against him.

■ Section 1109 states that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 *if the evidence is not inadmissible pursuant to Section 352.*" (Italics added.) The same provision is included in section 1108, pertaining to sex offenses. The *Falsetta* court declared: "[T]he trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge. As stated in [*People v.*] *Fitch* [(1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753]], '[S]ection 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under . . . section 352. (. . . § 1108, subd. (a).) By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (. . . § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.] *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.*' (*Fitch, supra,* 55 Cal.App.4th at p. 183, italics added.)" (*People v. Falsetta, supra,* 21 Cal.4th at pp. 917–918.)

■ Given our Supreme Court's emphatic reliance on the trial judge's ability to exclude unduly prejudicial propensity evidence as a component of due process, we are reluctant to stretch section 1109 beyond its intended purpose to authorize instructions that permit the jury to draw an inference of criminal propensity from evidence pertaining to other-charged offenses, which cannot be excluded under section 352. The Attorney General contends Quintanilla could have sought similar protection by moving to sever the charges against him. However, a defendant faces a higher burden in seeking a severance than in seeking to exclude other-crimes evidence. "Because of the factors favoring joinder, a party seeking severance must make a stronger showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial." (*People v. Arias* (1996) 13 Cal.4th 92, 127 [51 Cal.Rptr.2d 770, 913 P.2d 980].) The balancing process contemplated in *Falsetta* does not occur on a motion to sever charges.

■ The Attorney General also argues that the plain terms of section 1109 apply to other-crimes evidence whether the other crimes are charged or uncharged. We disagree. The statute expressly conditions the admissibility of propensity evidence on the trial court's power to evaluate the evidence under section 352. As discussed, *ante,* evidence relevant to other charged offenses cannot be excluded under section 352. Accordingly, the statute does not contemplate the use of other charged offenses to prove a defendant's disposition to commit domestic violence.

Nor do we believe the Legislature meant for juries to weigh the evidence supporting domestic violence charges under two different standards of proof—beyond a reasonable doubt on each charged offense, but preponderance of the evidence for purposes of assessing a defendant's propensity. The *Reliford* court rejected the argument that the burden of proof instructions in CALJIC No. 2.50.01, which tell the jury to apply the preponderance standard to a prior offense and the reasonable doubt standard to the charged offense, were unduly confusing. (*People v. Reliford, supra,* 29 Cal.4th at p. 1016.) However, the instructions before us are significantly different from those before the *Reliford* court. Here the trial court told the jury to consider charged offenses under the preponderance standard for purposes of drawing a propensity inference, while also weighing the same evidence under the reasonable doubt standard for purposes of deciding Quintanilla's guilt on each charge. Such mental gymnastics may or may not be beyond a jury's ability to perform, but we are confident they are not required by section 1109.

■ Although the court's propensity instructions were erroneous, we agree with the Attorney General that the error was not prejudicial. The jury acquitted Quintanilla or failed to reach a verdict on multiple charges of domestic violence offenses, including a charge of assault with a deadly weapon arising from the events of May 14, 2002, which were the basis for all the guilty verdicts. Quintanilla admitted hitting Isabel on May 14, and the evidence of Isabel's physical injuries strongly supported his false imprisonment and aggravated assault convictions. Only the criminal threat charge of which he was convicted depended solely on Isabel's testimony, and we have reversed that conviction on another ground. We are satisfied beyond a reasonable doubt that the propensity instruction had no bearing on the result in this case. (*People v. James* (2000) 81 Cal.App.4th 1343, 1360–1363 [96 Cal.Rptr.2d 823].)

4.–6.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 572.

## DISPOSITION

The conviction for intimidating a witness (count VIII) is reversed. The judgment is otherwise affirmed.

Corrigan, Acting P. J., concurred.

**POLLAK, J.,** Concurring.—I concur in the disposition of this appeal, and agree with the reasoning of the majority as to all issues except the impropriety of the trial court's modified propensity instruction. While the majority concludes that giving modified CALJIC No. 2.50.02 was a harmless error, I do not believe that it was an error at all.

As the majority correctly points out, evidence of a defendant's criminal propensity is ordinarily inadmissible. (Evid. Code, § 1101.)[1] However, as the majority also recognizes, the Legislature has created exceptions to this rule in cases involving sexual offenses (§ 1108) and domestic violence (§ 1109). Our Supreme Court has held that section 1108 satisfies the requirements of due process. (*People v. Falsetta* (1999) 21 Cal.4th 903, 922 [89 Cal.Rptr.2d 847, 986 P.2d 182].) It has also ruled that CALJIC No. 2.50.01, which explains the application of section 1108, is a correct statement of the law. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012 [130 Cal.Rptr.2d 254, 62 P.3d 601].) Following these decisions, the constitutionality of section 1109 has been upheld (*People v. Price* (2004) 120 Cal.App.4th 224, 240 [15 Cal.Rptr.3d 229]; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1312 [97 Cal.Rptr.2d 727]), as has the corresponding CALJIC instruction, No. 2.50.02 (*People v. Pescador* (2004) 119 Cal.App.4th 252, 261–262 [14 Cal.Rptr.3d 165]).

There is no justification in the language of section 1109 for restricting its application to prior offenses that are not charged in the case on trial. Section 1109 renders admissible in an action in which the defendant is accused of an offense involving domestic violence "evidence of the defendant's commission of other domestic violence" if that evidence is not inadmissible under section 352. The terms of the statute apply equally to other charged and uncharged acts of domestic violence.

The absence from section 1109 of a restriction to charged offenses is no oversight. Section 1108, subdivision (a) similarly applies to "evidence of the defendant's commission of another sexual offense or offenses," without regard to whether the other offenses have been charged. Section 1101, subdivision (a) refers to "evidence of a person's character or a trait of his or

---

[1] All statutory references are to the Evidence Code.

her character" without regard to whether such evidence relates to charged or uncharged offenses. Section 1101, subdivision (b) refers to "evidence that a person committed a crime," again without reference to charges, and permits the admission of such evidence to prove facts other than criminal propensity, including motive, opportunity, intent, plan, or preparation.

The exceptions provided in section 1101, subdivision (b) have not been limited to uncharged offenses. The Supreme Court has made clear that juries may properly consider evidence underlying other charged crimes for the purposes permitted by these exceptions as well as to establish the charged offenses, so long as the evidence would have been cross-admissible if the charges were tried separately. (*People v. Ochoa* (1998) 19 Cal.4th 353, 410–411 [79 Cal.Rptr.2d 408, 966 P.2d 442]; *People v. Catlin* (2001) 26 Cal.4th 81, 153 [109 Cal.Rptr.2d 31, 26 P.3d 357].)[2]

Evidence of criminal propensity is both circumstantially relevant and highly probative. (*People v. Falsetta, supra,* 21 Cal.4th at p. 915; *People v. Reliford, supra,* 29 Cal.4th at p. 1012.) Like most domestic violence cases, the charges against Quintanilla involved intimate, secretive behavior and turned on a credibility contest between the victim and the defendant. (*People v. Jennings, supra,* 81 Cal.App.4th at p. 1313.) The relevance of the conduct for which Quintanilla was separately charged, in evaluating his propensity to engage in domestic violence and the likelihood that he committed a particular offense here, was no less than if that conduct had not been the subject of separate charges.

In *Falsetta,* the court identified three considerations underlying the usual rule barring propensity evidence despite its relevance—the unfair burden of defending against uncharged as well as charged offenses, the inefficiency of holding protracted "mini-trials" on uncharged offenses, and the prejudice that may arise from the admission of other offenses. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 915–916.) The first two of these factors are not present when the evidence is relevant to other charges that are being tried together with the offense to which the propensity evidence relates. The third factor, prejudicial effect, is an inherent aspect of trials on multiple charges, which is mitigated to some extent by the rules governing severance. (See, e.g., *People v. Catlin, supra,* 26 Cal.4th at p. 110; *People v. Arias* (1996) 13 Cal.4th 92, 126–127 [51 Cal.Rptr.2d 770, 913 P.2d 980].)

---

[2] Quintanilla claims there is a "vast difference" between propensity evidence and evidence admitted under section 1101, subdivision (b), but propensity evidence is similar to other-crimes evidence of motive or plan, in particular. (See *People v. Falsetta, supra,* 21 Cal.4th at p. 914 ["far-ranging" exceptions in § 1101, subd. (b) compared to exception provided by § 1108].) In any event, by enacting section 1109 the Legislature abolished the distinction between other-crimes evidence admissible under section 1101, subdivision (b) and evidence of other crimes of domestic violence.

In *Falsetta*, the Supreme Court held that the crucial factor ensuring that a defendant's right to due process is not violated by the admission of prejudicial propensity evidence under section 1108 is the explicit requirement, found in both sections 1108 and 1109, that the evidence not be "inadmissible pursuant to Section 352." (*People v. Falsetta, supra*, 21 Cal.4th at pp. 911, 917–918.) The *Falsetta* court contemplated that in the usual case involving uncharged other offenses, section 352 would provide a safeguard against undue prejudice by requiring the court to exclude the propensity evidence if its prejudicial impact outweighed its probative value. (*People v. Falsetta, supra*, at pp. 916–917.) The majority is correct, of course, that evidence of other charged crimes cannot be excluded on this basis. However, assuming that the potential prejudice is not so great as to require separate trials (which in some cases may be the only effective means of preventing prejudice), permitting the jury to draw an inference concerning the defendant's propensity to engage in such conduct will not necessarily aggravate that potential. There is no reason why the same factors that the court must consider in determining whether to exclude evidence under section 352 cannot be considered in determining whether to give an instruction along the lines of CALJIC No. 2.50.02 permitting consideration of the evidence to show propensity or, alternatively, to give an instruction along the lines of CALJIC No. 2.09 limiting consideration of the evidence to the offense to which it directly relates. If the court determines that the particular evidence would be admissible under section 352 if the offense with respect to which it is offered as propensity evidence were tried separately, then an instruction such as CALJIC No. 2.50.02 is appropriate. If under section 352 the evidence is not cross-admissible, such an instruction should not be given. In this case, Quintanilla neither objected to the instruction that was given on section 352 grounds nor did he request an instruction limiting consideration of the disputed evidence to specified charges. His only objection at trial was that section 1109 does not permit evidence of *any* other charged crimes to be used to establish a defendant's criminal propensity.

However, sections 1108 and 1109, like section 1101, are concerned with admissibility for particular purposes, and these purposes have nothing to do with whether charges are brought separately or together. As pointed out, *ante*, section 1101 has been applied to permit juries to consider charged as well as uncharged misconduct. If other-crimes evidence would be admissible and a proper subject of jury instructions in separate trials on domestic violence charges, there is no reason why propensity instructions should not also be given when the charges are tried jointly. Indeed, it is entirely illogical to permit the prosecution to show propensity to commit domestic violence with evidence of prior similar misconduct that was not felt to warrant prosecution in the same case, but to prohibit the use of such evidence when the conduct is deemed sufficiently aggravated to justify a separate charge.

The majority suggests that the "mental gymnastics" required to weigh evidence of domestic violence charges under two different standards of proof—beyond a reasonable doubt on each charged offense and preponderance of the evidence in assessing propensity—indicate that the Legislature did not intend to permit evidence of other charged domestic violence to be considered under section 1109. (Maj. opn., *ante*, at p. 583.) Passing the fact that this is not what the Legislature said in section 1109, this is precisely the type of analysis that the Supreme Court emphatically rejected in *People v. Reliford, supra,* 29 Cal.4th at page 1016. It is well settled that "evidentiary facts" such as other-crimes evidence are governed by the preponderance standard, while the reasonable doubt standard applies to the ultimate determination of guilt. (*People v. Medina* (1995) 11 Cal.4th 694, 763 [47 Cal.Rptr.2d 165, 906 P.2d 2]; *People v. Lisenba* (1939) 14 Cal.2d 403, 430 [94 P.2d 569].) It is not uncommon for a jury to be instructed on multiple standards in the same case, even when the different standards must be applied to the same evidence for the purpose of making different determinations. The *Reliford* court rejected the argument that CALJIC No. 2.50.01, which parallels the court's instruction in this case,[3] was likely to mislead the jury concerning the limited purpose for which the prior crimes evidence could be considered, or concerning the proper burden of proof to convict. (*People v. Reliford, supra,* 29 Cal.4th at pp. 1012–1016.) The court observed: "We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination whether defendant committed a prior sexual offense in 1991 . . . . [¶] We likewise reject the Court of Appeal's assertion that the instruction, even if correct, is too 'complicated' for jurors to apply. This is not the first time jurors have been asked to apply a different standard of proof to a predicate fact or finding in a criminal trial. [Citations.] As we do in each of those circumstances, we will presume here that jurors can grasp their duty—as stated in the instructions—to apply the preponderance-of-the-evidence standard to the preliminary fact identified in the instruction and to apply the reasonable-doubt standard for all other determinations." (*Id.* at p. 1016.) Thus, the interpretation that the majority opinion places on section 1109 disregards not only the explicit language of the statute but the clear directive of the Supreme Court in *Reliford.*

In this case the trial court was clearly sensitive to the potential for prejudice and carefully modified CALJIC No. 2.50.02 and related instructions

---

[3] *Reliford* upheld the sufficiency of the 1999 version of CALJIC No. 2.50.01, but observed that a change that was made in the 2002 revision of that instruction was an improvement. (*People v. Reliford, supra,* 29 Cal.4th at p. 1016.) The version of CALJIC No. 2.50.02 that was revised and used in this case incorporates the improvement noted by the Supreme Court.

to minimize that risk. The court restricted the jury's consideration of propensity evidence to charges "that involve domestic violence, such as injuring a cohabitant, false imprisonment, assault or making threats of death or great bodily injury," and admonished the jurors "not [to] draw the inference that the defendant is likely to commit any other crimes charged in this trial." The court further limited the instruction so the jury would not be allowed to draw any inferences from the sexual assaults, even though the statutory definition of "domestic violence" was broad enough to include those charges. The court also modified the CALJIC instruction to provide that if the jury found that Quintanilla was predisposed toward domestic violence, it could infer only that he "was likely to commit" the domestic violence offenses, rather than that he "did commit" the offenses as the unmodified CALJIC instruction would permit. (See *People v. James* (2000) 81 Cal.App.4th 1343, 1357, fn. 8 [96 Cal.Rptr.2d 823]; cf. *People v. Reliford, supra,* 29 Cal.4th at p. 1013 ["did commit" inference is legitimate].) Moreover, the court carefully and repeatedly admonished the jury to adhere to the reasonable doubt standard when determining Quintanilla's guilt on each charge. The court also gave CALJIC No. 17.02, as follows: "Each count charges a distinct crime. You must decide each count separately. The defendant may be found guilty or not guilty of any or all of the crimes charged. Your finding as to each count must be stated in a separate verdict . . . ." This instruction properly directed the jury to consider each charge independently, without limiting the jury's consideration of all the evidence. (*People v. Beagle* (1972) 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1], superseded by constitutional amendment on other grounds as stated in *People v. Castro* (1985) 38 Cal.3d 301, 307–313 [211 Cal.Rptr. 719, 696 P.2d 111] [instruction to decide each count separately does not mean jury should disregard relevant facts pertaining to other counts]; see also *People v. Catlin, supra,* 26 Cal.4th at p. 153.) In short, the instructions in this case were well tailored by the trial judge to avoid prejudice and were not reasonably likely to cause confusion as to the proper use of the propensity evidence. Nor were they likely to distract the jury from the necessity of finding Quintanilla guilty on each charge beyond a reasonable doubt.

There is no gainsaying the potential for prejudice in the use of propensity evidence. The tendency of such evidence to "overpersuade" the jury has been acknowledged. (*Michelson v. United States* (1948) 335 U.S. 469, 475–476 [93 L.Ed. 168, 69 S.Ct. 213]; *Old Chief v. United States* (1997) 519 U.S. 172, 181 [136 L.Ed.2d 574, 117 S.Ct. 644]; *People v. Falsetta, supra,* 21 Cal.4th at p. 915; see 1 Imwinkelried, Uncharged Misconduct Evidence (1999 rev.) § 1.03, p. 12.) Yet, the Legislature has recognized two instances in which

such evidence is permissible, and our Supreme Court has upheld the constitutionality of these provisions. In my opinion, there is no justification for limiting the scope of these provisions in a manner that disregards both their language and purpose, and does little to avoid the inherent risk of prejudice from a consolidated trial of multiple offenses.

Appellant's petition for review by the Supreme Court was denied November 30, 2005.