Filed 2/24/14  P. v. Harris CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JAMES HARRIS,<br><br>        Defendant and Appellant. | C072505<br><br>(Super. Ct. No. SF115436A) |

A jury convicted defendant James Harris of four counts of lewd acts with a child under the age of 14 (Pen. Code, § 288, subd. (a))[1] and two counts of lewd acts with a child between the ages of 14 and 15 (§ 288, subd. (c)(1)) with enhancements for substantial sexual conduct and multiple victims (§§ 1203.066, subd. (a)(7), (8), 667.61, former subd. (e)(5)).  The trial court sentenced defendant to 63 years 8 months to life.

On appeal, defendant contends the trial court erred in instructing the jury to consider both charged and uncharged acts as propensity evidence, did not understand it

---

[1]  Undesignated statutory references are to the Penal Code.

1

had the discretion to impose concurrent terms of 15 years to life for violations of section 288, subdivision (a) with the multiple victims enhancement, and trial counsel was ineffective for failing to object to the consecutive terms. We affirm the judgment of conviction and remand for the trial court to exercise its discretion to impose one of the terms concurrently or consecutively.

BACKGROUND

*The Prosecution Case*

T.Harris began dating defendant in January or February 2000 and married him in 2004. She lived with her three young daughters from prior relationships, K.D., S.H., and E.R.[2] The family first lived in Salida and then in a trailer home in French Camp. In 2004 or 2005, they moved to a house in Stockton, where the family lived until 2010.

Defendant assumed the role of father figure to the girls, who called him "dad." E.R. and K.D. described defendant as strict and controlling, imposing conservative standards for conduct and dress, as well as instructing them on sexual activity. When K.D. was in her early teens, defendant often told her that boys or men would eventually touch her nipples and clitoris, which would weaken her. Defendant had similar conversations with E.R.

Harris and defendant had two children, N.H. in 2006 and D.H. in 2008. Defendant started sleeping with 12-year-old S.H. when Harris was pregnant with N.H. Defendant eventually spent more nights in S.H.'s bedroom or with S.H. in the master bedroom where the door was normally closed and sometimes locked. When Harris expressed her concerns to defendant, he replied that S.H. was having nightmares and he was comforting her as part of a normal father/daughter relationship. He eventually wrote a letter to Harris

---

[2] K.D. was born in September 1991, S.H. in March 1994, and E.R. in April 1996.

stating she should encourage her daughter to sleep with him, there was nothing wrong with this, and it had been going on for four years.

According to E.R., defendant went to her while she was sleeping and pulled down her pants when she was in third grade. The next incident happened when she was 12, where she was in bed and defendant touched her inappropriately. He pulled up her shirt and touched her belly button, then moved on top of her and began "humping" her while wearing only his boxers. Defendant's "thingy" touched her vagina while her clothes were on. The incident lasted about 10 minutes.

This incident opened the door for other activity. Defendant would grab her breasts and rub them in a circular motion. When he was "humping" her in his boxer shorts, E.R. could feel his erect penis. The "humping" concluded when defendant ejaculated. On one occasion, he reached under her underwear and E.R. pulled back. Defendant never had her touch his penis, but did have E.R. squeeze and pull on his nipples to enhance his sexual satisfaction. She did not immediately disclose the molestation because defendant warned her that disclosure would tear the family apart.

Harris and defendant had only "a couple of" sexual encounters after D.H. was born. She once sought to rekindle their sexual relationship by buying a box of condoms for defendant. While defendant never used them with her, Harris later found the box had been opened and several were missing.

After K.D.'s 18th birthday, defendant wrote her a letter expressing his sexual desire for her, and his belief that she was coming on to him. The letter, which was left on K.D.'s bed, described defendant's belief that K.D. had sexual tension which needed addressing, and his offer to come into her room and have sex with her after everyone was asleep.

K.D., shocked and repulsed by the letter, immediately drove to Lodi, then to a friend's house in Stockton even though it was 11:00 p.m. Harris drove to the friend's house when K.D. told her to come over. She called the police after K.D. showed her the

3

letter. The responding officers talked to defendant, who said K.D. dressed provocatively and acted romantically towards him, and that he was sexually attracted to her. He admitted these feelings were wrong and needed help, so officers took him to a mental health clinic.

Defendant moved out to live with his father shortly thereafter. When defendant's mother asked Harris for defendant to have overnight visits with N.H. and D.H., Harris asked S.H. if there was any reason not to let the children stay with defendant. S.H., who previously told Harris that defendant had not molested her, said defendant touched her and had her touch him.[3] Harris then called the police. The following day, she informed E.R. about S.H.'s disclosure; E.R. then told Harris that defendant molested her.

In an interview with police, defendant admitted molesting E.R. and S.H. He rubbed his erect penis against E.R.'s clitoris while they were both clothed. Defendant also reached under E.R.'s panties to rub her vagina, but she "didn't want that" so he stopped. He admitted caressing S.H. His sexual contact with S.H. progressed; he had intercourse with her three months before the interview. Defendant slept with S.H. four to six nights a week and would perform any sex act on her he thought she would like.

Defendant dictated apology letters to E.R., S.H., K.D., and Harris during the interview.

Dr. Anthony Urquiza gave expert testimony on the Child Sexual Abuse Accommodation Syndrome (CSAAS).

He explained five characteristics which, according to the CSAAS theory, often occur in children who have been sexually abused: (1) secrecy; (2) the victim's feeling of helplessness; (3) the victim's feeling of entrapment and attempts to cope by accommodation; (4) delayed or unconvincing disclosure of the abuse; and (5) retraction.

---

[3] S.H. did not testify at trial. Her admission to Harris was admitted as a fresh complaint and not for the truth of the matter.

4

*The Defense*

The defense presented evidence showing E.R. once falsely accused a neighbor of molesting her.  E.R. later told the neighbor's wife she made up the accusation.  Defendant's mother testified that Harris told her she saw defendant molest S.H. but defendant would not let her report it.

DISCUSSION

I

Defendant contends the trial court committed prejudicial error in instructing the jury it could consider both charged and uncharged acts as propensity evidence.  We disagree.

A.

Defendant was charged and ultimately convicted of offenses against E.R. and S.H.[4]  The trial court instructed the jury with the standard instruction on uncharged misconduct as propensity evidence (CALCRIM No. 1191) as follows:

"Evidence has been introduced for the purpose of showing that the Defendant engaged in sexual offenses other than those charged in this case.  A sexual offense includes any act in violation of Penal Code Section 288[, subdivision] (a) and 288[, subdivision] (c) (1).

"The elements of these offenses are defined elsewhere in these instructions.  They are coming up.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the uncharged offenses.  Now, this is the only lesser burden.  Everything else in this case is beyond a reasonable doubt.  That proof is beyond a reasonable doubt except here.

---

[4]  At the close of the People's case-in-chief, the People dismissed four counts and the court dismissed one count related to S.H.

5

"Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude it's more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. If you decide the Defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the Defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the Defendant was likely to commit and did commit the offenses charged. If you conclude that the Defendant committed the uncharged offense that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the Defendant is guilty of the offenses charged. Again, the People must still prove each element of the offenses charged beyond a reasonable doubt."

The trial court then instructed the jury on evidence of charged offenses as propensity evidence:

"And this next one deals with propensity evidence, okay, for charged crimes. And, again, the parties talked about it. The People presented evidence that the Defendant committed the crime of lewd acts upon a child in the counts listed. These are the charged counts: One, Three, Eight, Nine, Ten and Eleven. These crimes are defined for you in the instructions for these crimes.

"If you decide the Defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the Defendant was disposed to -- was disposed or inclined to commit the other charged crimes of lewd act upon a child. And based on that decision also conclude that the Defendant was likely to and did commit the other offenses of lewd acts upon a child, the ones charged. If you conclude the Defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the Defendant guilty of another charged offense.

6

"The People must still prove each element of every charge -- talking about every charged offense -- beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.  Again, because they are charged offenses, you're going to say, well, somebody is guilty of Count One, I'm going to use that as disposition evidence too.  It has to be proved beyond a reasonable doubt, okay."

Defendant did not object to the propensity instructions.

The prosecutor's closing argument discussed the use of charged and uncharged offenses as propensity evidence.  The prosecutor said the elements of the charged crimes had to be proven beyond a reasonable doubt and the jury would "use this as one factor along with all the other evidence."  If, for example the jury found beyond a reasonable doubt that defendant touched S.H., then it could use that "to show that he has an inclination or propensity to commit sex acts against children under the age of 14."  Regarding uncharged offenses, the prosecutor said the burden of proof is "the preponderance of the evidence, which means more likely than not the fact is true."  Therefore, if the jury found defendant touched E.R. 50 times and he was not charged with touching her 50 times, "if you find that he did that, you can use the fact that you believe [E.R].  That every time she would go into his room, he would molest her, you can use that by a preponderance of the evidence to find that he did, in fact, molest [S.H.] every time she went and slept in his bed, okay."

Defendant did not object to the prosecutor's argument.

B.

Since defendant did not object to the instructions, his contention is forfeited unless the instruction affected his substantial rights.  (§ 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.)  Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable the defendant would have obtained a

7

more favorable result had the correct instruction been given. (*People v. Christopher,* at pp. 426-427; *People v. Watson* (1956) 46 Cal.2d 818, 835-836.)

"On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].)

Defendant claims "the trial court committed prejudicial error by instructing the jurors that they could rely on both charged and uncharged acts without limitation as to either child as evidence of his propensity to commit any or all of [the] charged offenses since the conflicting standards of proof likely misled the jurors and caused the jurors to be confused as to which acts could be relied on as propensity evidence and to what extent they could be relied on in view of other limitations stemming from the fresh complaint doctrine and application of the corpus delicti rule to the use of the confession."

The instruction on uncharged misconduct as propensity evidence was correct. In *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1016, the California Supreme Court approved the nearly identical predecessor instruction to CALCRIM No. 1191, CALJIC No. 2.50.01. As we concluded in *People v. Cromp* (2007) 153 Cal.App.4th 476, 480, there is no material difference between CALCRIM No. 1191 and the older CALJIC No. 2.50.01, and the analysis in *Reliford* applies with equal force to the CALCRIM instruction. CALCRIM No. 1191 is constitutionally sound.

The instruction on charged offenses as propensity evidence was likewise correct. In *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), the Supreme Court held "nothing in the language of [Evidence Code] section 1108 restricts its application to

8

uncharged offenses," and "perceive[d] no reason why the Legislature would exclude charged sexual offenses from [the statute's] purview, and no indication that it did so." (*Id*. at p. 1164.) *Villatoro* also approved an instruction similar to the instruction on charged misconduct as propensity evidence adopted in this case. "Unlike the standard pattern instruction CALCRIM No. 1191, which refers to the use of uncharged offenses, the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof. [Citation.] Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence." (*Id.* at pp. 1167-1168.) As in *Villatoro*, the jury was properly instructed on the definition of reasonable doubt[5] and the modified CALCRIM No. 1191 given here informed the jury it could use a charged offense as propensity evidence only if it found every element of the charge proven beyond a reasonable doubt.[6] There is nothing wrong with this instruction on charged offenses as propensity evidence.

---

[5] The trial court also instructed the jury with the definition of reasonable doubt in CALCRIM No. 220.

[6] The modified instruction given in *Villatoro* provided: " 'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence

9

Defendant tries to distinguish *Villatoro* as it involved much stronger independent evidence of the charged crimes and did not address instructing the jury on both charged and uncharged offenses as propensity evidence. Neither claim is tenable. *Villatoro* did not premise the correctness of the instruction on the presence of ample independent evidence of the charged crimes, limiting its analysis of the modified CALCRIM No. 1191 to whether the instruction's language "impermissibly lower[ed] the standard of proof or otherwise interfere[d] with defendant's presumption of innocence." (*Villatoro, supra*, 54 Cal.4th at p. 1168.) The strength of the evidence of guilt was relevant only to the Supreme Court's conclusion that any error regarding the instruction was harmless.[7] (*Villatoro,* at pp. 1168-1169.)

---

that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.' " (*Villatoro, supra*, 54 Cal.4th at p. 1167 & fn. 7.)

[7] The Supreme Court concluded *Villatoro* with the following statement: "In sum, under the facts of this case, the trial court did not err in giving the modified instruction. We do not decide, however, whether courts should give such an instruction in the future." (*Villatoro, supra*, 54 Cal.4th at p. 1169.) We do not view this statement as depriving *Villatoro* of precedential authority for other cases.

In *Villatoro,* the defendant challenged the instruction in the Court of Appeal based on *People v. Quintanilla* (2005) 132 Cal.App.4th 572, which held that charged offenses could not be considered as propensity evidence. (*Villatoro, supra*, 54 Cal.4th at p. 1156, 1159, 1162.) The Court of Appeal upheld the conviction based on *People v. Wilson* (2008) 166 Cal.App.4th 1034, a recent decision upholding an instruction on charged offenses as propensity evidence similar to the instructions given in *Villatoro* and this case. (*Villatoro*, at pp. 1156, 1159.) The Supreme Court disapproved *Quintanilla* in part in determining that Evidence Code section 1108 permitted the use of charged offenses as propensity evidence. (*Villatoro,* at p. 1163 & fn. 5.)

The fact that the jury was instructed on charged and uncharged offenses does not lead to a different conclusion. As we have already discussed, both offenses properly informed the jury that it had to find every element of the charged offense proven beyond a reasonable doubt before it could find defendant guilty. The instructions also told the jury both types of propensity evidence were simply one factor for the jury to consider, and defendant could not be convicted based on propensity evidence alone. While CALCRIM No. 1191 instructed the jury on the preponderance standard, the instruction carefully limited the applicability of that standard to determining the existence of prior uncharged offenses.

The two instructions in question correctly informed the jury of the relevant standards of proof, how and when to apply them, and how to use propensity evidence. We presume the jury followed these instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) In the context of this case, two right instructions do not combine to create a wrong one.

Defendant's other attempts to cast doubt on the instructions are equally unavailing. He claims "the instructions improperly allowed the jury to rely on acts involving S.H. based on appellant's confession even though S.H. did not testify. And the instructions further permitted reliance on E.R.'s testimony to bolster the weaker charges relating to S.H." The jury was correctly instructed with CALCRIM No. 359 on the corpus delicti rule,[8] and there was ample evidence upon which a jury could find the corpus regarding

---

We view the concluding statement in *Villatoro* as a warning to lower courts to use caution in determining whether to instruct on charged offenses as propensity evidence. To the extent that *Villatoro* is limited to its specific facts, we uphold the instruction on charged offenses based on *Wilson*.

[8] The instruction stated: "The Defendant may not be convicted of any crime based totally on his out-of-court statement. You may rely on the Defendant's out-of-court statements to convict him if you conclude there is other -- if you conclude that other

the charges related to S.H., defendant regularly sleeping with her behind closed doors, the absence of sexual relations with Harris once this started, and the missing condoms. While the evidence of the charges related to E.R. may have been stronger, it does not violate Evidence Code section 1108 or due process to allow propensity evidence to bolster the prosecution's case.

Defendant's claim that the prosecutor's arguments on propensity evidence demonstrates the instructions were confusing is also without merit. Defendant does not and cannot claim the argument rises to the level of prosecutorial misconduct. The trial court instructed the jury that it must follow the law as given by the court and to ignore any contradictory statements by the attorneys. We presume " 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Morales* (2001) 25 Cal.4th 34, 47, quoting *People v. Sanchez* (1995) 12 Cal.4th 1, 70.)

II

Defendant contends the trial court did not understand it had the discretion to impose concurrent terms of 15 years to life for counts 1, 8, 9, and 10. The Attorney General agrees as to a single count, but disagrees as to the remaining counts.

In counts 1, 8, 9, and 10, defendant was convicted of lewd acts with a child under the age of 14 (§ 288, subd. (a)) with enhancements for multiple victims (§§ 667.61,

---

evidence shows that the crimes charged were committed. No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession made by him outside of the trial. The other evidence may be slight, and need only support a reasonable inference that a crime was committed. The identity of the person who committed the crime may be proven by Defendant's statement alone. You may not convict the Defendant unless the People have proved his guilt beyond a reasonable doubt."

12

former subd. (e)(5), 1203.066, subd. (a)(7))**9** and substantial sexual conduct (§ 1203.066, subd. (a)(8)). A person convicted under section 288, subdivision (a) with the multiple victims enhancement is subject to a term of 15 years to life. (§ 667.61, subds. (b), (c)(8).)

A.

The trial court designated count 1 as the principal term and imposed 15 years to life. The trial court next addressed count 8, stating: "It's another 288[, subdivision] (a). It has the same enhancements, 667.61[, subdivision] (e)(5) and 1203.066[, subdivision] (a)(7). And there's a significant distinction, that is, it's a different victim, [E.R.], who has some issues here. And they were significant and vetted throughout the trial, so I'm not going to repeat that. She has some problems, according to the testimony we had. So it's a separate victim, and I would have to sentence you on that to 15 to life. And it would be consecutive, because under 667.61[, subdivision] (g), it's a separate victim. We have two victims here."

Former subdivision (g) of section 667.61 placed a limitation on subdivision (b) of the statute as follows: "The term specified in subdivision . . . (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term . . . shall be imposed on the defendant once for each separate victim."**10**

Defendant and the Attorney General agree that the trial court did not understand its discretion to impose a concurrent term on this count. They are correct. The trial

---

**9** Section 667.61, subdivision (e)(5) was subsequently renumbered subdivision (e)(4) without change. (Stats. 2010, ch. 219, § 16.)

**10** In 2006, the Legislature amended subdivision (g) to read as follows: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike any allegation, admission, or finding of any of the circumstances specified in subdivision (d) or (e) for any person who is subject to punishment under this section." (§ 667.61, subd. (g); Stats. 2006, ch. 337, § 33.)

court's declaration that it had to sentence defendant to a consecutive term for this count because it involved a separate victim is wrong. The only provision requiring consecutive terms is subdivision (i), which mandates consecutive sentences for every term imposed pursuant to subdivisions (c))(1) to (7) or (n)(1) to (6) "if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 667.6, subd. (i).) Defendant, who was sentenced pursuant to subdivision (c)(8) of section 667.61, is not subject to mandatory consecutive terms. The fact that defendant committed his crimes against more than one victim did not require consecutive life terms under section 667.61.

B.

After imposing the consecutive term on count 8, the trial court addressed the sentences for counts 9 and 10 as follows:

"The more troublesome issue are the following counts, Nine and Ten on [E.R]. Because they are virtually identical in terms of the charge and the enhancements found true, identical to Count Eight. And the decision I have to make is in sentencing you on those, do I sentence you to consecutive or concurrent terms? And if I make it consecutive, I add them -- I'd add them on top of each other. Concurrent means they run along.

"There is the case that the People mentioned, it's the People versus Jones. It's a 2001 case. I did write the cite, down, 25 Cal.4th at 98. It talks about misconduct of this type on separate occasions is the magic -- or basically different times, okay. In your case, the allegations in Eight, Nine and Ten were that it was with [E.R.], okay, over a period of time from April of '08 -- April 3 of '08 -- to April of 2010, a significant period of time.

"Now, the People did raise some valid points in their sentencing brief, which is the gist, the substance of [E.R.'s] testimony is this happened a lot, okay, a variety of different kinds of misconduct that was not just once or twice over the period, but repeated misconduct. Although, for the purposes of the jury and for the purpose of a very clear

14

verdict, we specifically put down Counts Eight, Nine and Ten. They involved different types of conduct here, because that was conduct she testified to. And my memory is on many occasions, including many different occasions, okay, and separate occasions.

"So I have to decide here, okay, in this situation, are these separate occasions involving [E.R.]? And I find that they are. And they are over an extended period of time that there were many inappropriate touchings, so I believe that Count Nine and Count Ten are separate occasions from Count Eight and any other count here, and therefore it would require consecutive time.

"A big reason here is not just the separate times, not just the two years, okay, but also there are factors that we've hinted at here and addressed briefly. But you were really in a large position of trust. You were the stepfather to these kids, and as such, in a great position of trust to very vulnerable kids, including [E.R.]. Now, people might debate, did she fabricate, did she make it up? By her own testimony, she's a deeply troubled girl with some emotional and intellectual difficulties, okay.

"So the finding by the jury that you're guilty of these charges is in fact an endorsement that you did take advantage of a position of trust with someone who was extremely vulnerable. That's an important factor. So on these counts, the most serious counts, One, Eight, Nine and Ten, in essence, the sentence I'm pronouncing is 60 to life. Now, that sounds unfair, but these are very, very serious charges."

Defendant argues that, as with count 8, the trial court did not understand it had the discretion to impose concurrent terms on counts 9 and 10. Focusing on the trial court's reference to concurrent or consecutive terms, the Attorney General counters that this shows the trial court understood its discretion. In reply, defendant claims this language referred simply to the decision on whether to stay sentences pursuant to section 654. Defendant also claims the trial court's references to *People v. Jones* (2001) 25 Cal.4th 98 (*Jones*) was erroneous, as that case addressed consecutive sentences for forcible sex crimes, and therefore did not apply here.

15

We agree with the Attorney General. The trial court's discussion of the appropriate sentence for counts 9 and 10 did not address section 654. The authority it did refer to, *Jones*, addressed section 667.61, former subdivision (g)'s requirement of no more than a single life term for any offenses committed against a single victim on a single occasion, defining "the meaning of the phrase 'single occasion' " as "there was a close temporal and spatial proximity between offenses." (*Jones, supra*, 25 Cal.4th at pp. 100-101.) The trial court's reference to counts 8 and 9 taking place over a long time and involving many touchings distinguished defendant's crimes from *Jones*'s definition of single occasion.

We nonetheless agree with defendant that *Jones* was inapplicable to his sentence on counts 9 and 10, albeit for a different reason. The single victim and occasion limitation of section 667.61, former subdivision (g)(1) was repealed effective September 20, 2006. (Stats. 2006, ch. 337, § 33.) Since counts 9 and 10 were committed between April 3, 2008, and April 2, 2010, this provision does not directly apply to those crimes. Although section 667.61, former subdivision (g) could apply to defendant's sentence on count 1, as it involved acts committed between March 25, 2006, and March 24, 2007, this did not make it applicable to counts 9 and 10 as counts 9 and 10 involved E.R. while count 1 involved S.H.

Section 667.61, former subdivision (g) could only operate to limit defendant's sentence; had the trial court applied it to stay the sentence on either count, then defendant would benefit from the trial court's error. Here, the trial court reached the right result, former subdivision (g) did not apply, but failed to ascertain the correct reason to reach that result. This error did not prejudice defendant.

The question remains as to whether the trial court's error subverted its understanding of its discretion to impose concurrent or consecutive terms. We find that it did not. In the second to last paragraph quoted above, the trial court addressed factors not relevant to section 667.61, former subdivision (g), but typical of a decision to impose

16

concurrent or consecutive terms, that defendant was in a position of trust and the victims were particularly vulnerable. In the concluding paragraph, the trial court reiterates these factors, notes their importance, and then states it is imposing consecutive terms on all four counts.

The trial court began its discussion of counts 9 and 10 by recognizing its discretion to impose concurrent or consecutive terms and imposed consecutive terms based on the victim's vulnerability and defendant's position of trust. In spite of its error regarding section 667.61, former subdivision (g), the trial court clearly understood and exercised its discretion to impose concurrent or consecutive terms on counts 9 and 10.

### C.

When a trial court does not understand its discretion in sentencing, the appropriate action is to remand the matter for the trial court to exercise its sentencing discretion. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) We shall therefore remand for the trial court to exercise its discretion to impose a concurrent or consecutive term on count 8.

### DISPOSITION

The judgment is affirmed. The matter is remanded for the trial court to exercise its discretion to impose a concurrent or consecutive term on count 8.

                                     BLEASE              , J.

We concur:

     RAYE              , P. J.

     MURRAY          , J.