Filed 7/30/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,                                                )
                                                          )
    Plaintiff and Respondent,                       )
                                                          )               S192531
        v.                                           )
                                                          )      Ct.App. 2/8 B222214
JUAN JOSE VILLATORO,                                       )
                                                          )      Los Angeles County
    Defendant and Appellant.                        )    Super. Ct. No. BA339453
_____)

        Pursuant to Evidence Code[1] section 1108, pattern jury instruction CALCRIM No. 1191 explains to a jury that it may consider a defendant's uncharged sexual offense as evidence of his or her propensity to commit a charged sexual offense. Relying on a recent case, the trial court here modified CALCRIM No. 1191 to permit the jury to consider the defendant's *charged* sexual offenses as evidence of his propensity to commit the other charged sexual offenses. (See *People v. Wilson* (2008) 166 Cal.App.4th 1034, 1052 (*Wilson*).) The jury subsequently convicted defendant Juan Jose Villatoro of various counts of kidnapping, robbery, and rape against five women.

        On appeal, defendant challenged the modified instruction based on *People v. Quintanilla* (2005) 132 Cal.App.4th 572 (*Quintanilla*), which held that charged offenses could not be considered as propensity evidence under a similar provision (§ 1109) and its corresponding jury instruction (CALJIC No. 2.50.02). Relying in part on *Wilson*, the

---

[1]    Further statutory references are to the Evidence Code unless otherwise noted.

Court of Appeal below rejected defendant's challenges to the modified instruction. For reasons that follow, we affirm the Court of Appeal's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with committing various offenses, including rape, against five women between 2005 and 2008.

*R.I.*

On May 25, 2005, prostitute R.I. agreed to have sex with defendant for $80 and got into his car. After driving to a nearby residential area, defendant stopped the car, pulled out a gun from the backseat, and told the victim not to move or look at him or else he would kill her. Defendant forced R.I. to have vaginal and anal intercourse, then whipped her on the back for 20 minutes with electrical extension cords. He then took her cell phone and told her to get out of the car.

The bruises on R.I.'s back and vagina, along with the swelling in her legs, were consistent with her account of the attack. DNA samples taken from R.I were later found to match defendant's DNA. R.I. subsequently identified defendant from a six-pack photographic lineup.

*N.G.*

On June 21, 2006, 18-year-old N.G. was walking home late at night when defendant drove up in a car, pointed a gun at her, and told her to get in his car or else he would kill her. She got in and defendant drove off. He told her not to look at him, and held a razor to her ribcage as he drove. When he stopped in a residential area, he forced N.G. to have vaginal intercourse, and inserted his fingers into her vagina. Defendant took the victim's cell phone, rings, and sunglasses, and then let her go.

DNA samples taken from N.G. were later determined to match defendant's DNA. Almost two years after the attack, N.G. identified defendant from a six-pack photographic lineup.

2

*Beverly G.*

On February 3, 2008, prostitute Beverly G. agreed to have sex with defendant for $100. After she got into his car, defendant drove a short distance to a residential area. When he stopped the car, he pulled out a stun gun, activated it, and told Beverly not to move. He held the stun gun to her neck and screamed, "Don't look at me." He forced her to have vaginal and anal intercourse. Whenever Beverly looked at defendant, he slapped her or spat at her. After he was done, defendant told her to get out; she did not retrieve her belongings before getting out of the car.

Beverly eventually told police what had happened and identified defendant from a six-pack photographic lineup on May 2, 2008.

*C.C.*

In the early morning of February 10, 2008, defendant offered a ride to C.C., who was waiting at a bus stop. She accepted the ride because another man had been harassing her. C.C. asked defendant to drive her to Hollywood. When she noticed he had driven to Santa Monica, she became worried and nervous. She asked defendant to stop so that she could use a restroom. Defendant pulled over, handed C.C. some baby wipes, and told her to relieve herself in the grass. Defendant watched as she did so.

After defendant promised to take her home, C.C. got back into his car. He then pulled out a Taser or stun gun, activated it, and placed it near her throat. He ordered C.C. to take off her pants, which she did. He told her not to look at him, punched her in the face, and made her cover her head with her shirt. Defendant forced C.C. to have vaginal intercourse, bit her left breast, and pulled out some of her hair. He took her purse.

C.C.'s physical injuries — a bite mark and suction injury on C.C.'s left breast — were consistent with her account of the attack. DNA samples taken from her body were later found to match defendant's DNA. In April 2008, C.C. identified defendant from a six-pack photographic lineup.

3

*Kimberly J.*[1]

On April 4, 2009, around 3:00 a.m., prostitute Kimberly J. got into defendant's car. He drove a few blocks before parking the car on a secluded street. He then jumped on top of Kimberly and said, "Shut up or I'm going to kill you." He pulled out a stun gun and turned it on to scare her. After defendant ripped off Kimberly's underwear and pulled down her skirt, he forced her to have vaginal intercourse. He repeatedly pushed her head and told her not to look at him. When defendant was done, he took Kimberly's jewelry and cell phone and ordered her out of the car.

Kimberly's physical injuries — vaginal bruising and abrasions on her hymen — were consistent with her account of the attack. DNA samples were taken from Kimberly, which were later determined to match defendant's DNA. Kimberly helped police create a composite drawing of her attacker, and she later identified defendant from a six-pack photographic lineup.

At trial, the victims (all but Kimberly J.) testified about what had happened to them, and indicated they did not know one another before they were attacked. Without objection, the trial court instructed the jury with a modified version of CALCRIM No. 1191, which permitted the jury to use evidence of defendant's guilt of one of the charged sexual offenses as evidence of his propensity to commit the other charged sexual offenses. The jury convicted defendant of five counts of rape, one as to each victim. It also convicted him of one count of kidnapping to commit another crime as to N.G.; and four counts of robbery, each as to N.G., Beverly G., C.C., and Kimberly J. The jury also found true allegations that defendant (1) personally used a firearm during the rapes of R.I. and N.G., and during the kidnapping and robbery of N.G.; and (2) personally used a

---

[1] Kimberly refused to testify at trial and the trial court, over defense counsel's objection, declared her unavailable under section 240. Her preliminary hearing testimony, which provided details of the incident, was read into the record at trial. Though the admissibility of her testimony was at issue below, it is not an issue here.

deadly or dangerous weapon as to all of the five rapes and as to the robberies of C.C. and Kimberly J. The trial court sentenced defendant to 153 years to life. Defendant appealed.

Relying on *Quintanilla*, *supra*, 132 Cal.App.4th 572, defendant challenged the modified instruction on several grounds: the instruction violated section 1108 because it allowed the jury to use charged, rather than uncharged, offenses to prove his disposition to commit the other charged offenses; because it did not identify what standard of proof was required before the jury could consider the charged offense as propensity evidence; and because it did not reiterate that despite the inferences the jury could draw from its finding that a charged offense occurred, defendant still retained the presumption of innocence. Based in part on *Wilson*, *supra*, 166 Cal.App.4th 1034, the Court of Appeal rejected defendant's challenges to the modified instruction. We granted defendant's petition for review.

DISCUSSION

A.    Character Evidence and Section 1108

Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. (§ 1101, subd. (a) (section 1101(a)); Cal. Law Revision Com. com., reprinted at 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1101, p. 221; see *People v. Carter* (2005) 36 Cal.4th 1114, 1147.) This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity (§ 1101, subd. (b)), and does not affect the admissibility of evidence regarding the credibility of a witness (*id*., subd. (c)). (See *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) The Legislature has also created specific exceptions to the rule against admitting character evidence in cases involving sexual offenses (§ 1108, subd. (a)), and

5

domestic violence, elder or dependent abuse, or child abuse (§ 1109, subd. (a)(1)-(3)). (See § 1101(a).)

As relevant here, section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."[1] Enacted in 1995, section 1108 "implicitly abrogates prior decisions of this court indicating that 'propensity' evidence is per se unduly prejudicial to the defense." (*Falsetta*, *supra*, 21 Cal.4th at p. 911.) "As the legislative history indicates, the Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (*Id*. at p. 915.)

Nearly every published opinion interpreting section 1108 (including some from this court) has recognized that this provision allows, when proper, evidence of prior uncharged sexual offenses to prove propensity. (See, e.g., *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1013 (*Reliford*); *Falsetta*, *supra*, 21 Cal.4th at pp. 917-918; *People v. Fitch* (1997) 55 Cal.App.4th 172, 181-182.) The pattern jury instruction explaining the application of section 1108 (CALCRIM No. 1191) likewise refers to uncharged sexual offenses. With regard to the admission of uncharged sexual offenses, we have held that section 1108 satisfies the requirements of due process (*Falsetta*, *supra*, 21 Cal.4th at p.

---

[1] Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

917), and that CALJIC No. 2.50.01, the predecessor to CALCRIM No. 1191, is a correct statement of the law (*Reliford*, *supra*, 29 Cal.4th at pp. 1012-1016).  (See also *People v. Cromp* (2007) 153 Cal.App.4th 476, 480 ["no material difference" between CALJIC No. 2.50.01 & CALCRIM No. 1191].)  Notwithstanding their repeated references to uncharged sexual offenses, these cases significantly did not consider whether section 1108 extended to charged offenses as well.  We consider that issue here.

Section 1108 provides that in a sexual offense case, "evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  By its terms, the statute does not distinguish between charged or uncharged sexual offenses, and refers instead to "*another* sexual offense or offenses."  (Italics added.)  As used here, the ordinary meaning of the word "another" is "being one more in addition to one or a number of the same kind:  ADDITIONAL." (Webster's 3d New Internat. Dict. (2002) p. 89; see *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word"].)  This definition of "another" contains no limitation, temporal or otherwise, to suggest that section 1108 covers only offenses other than those for which the defendant is currently on trial.

Section 1108's qualifying language that such evidence is "not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352," also does not mandate that the sexual offense be uncharged.  The argument is that evidence relating to the charged sexual offenses which the defendant is currently facing is independently admissible and would not be rendered inadmissible by either section 1101 or section 352; in other words, the phrase makes no sense if applied to charged offenses.  (See conc. & dis. opn. of Corrigan, J., *post*, at pp. 6, 11-12.)  We are not persuaded.

7

*1.     "Not Made Inadmissible by Section 1101"*

First, we must construe the words of sections 1101 and 1108, which cross-reference each other, consistently.  (See *Isobe v. Unemployment Ins. Appeals Board* (1974) 12 Cal.3d 584, 590-591.)  Though section 1101 speaks in terms of the admissibility or inadmissibility of evidence, we have held that the provision (§ 1101(b)) applies not only to evidence of uncharged misconduct (*People v. Kelly* (2007) 42 Cal.4th 763, 782-783; *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*)), but also to evidence (already admitted) of charged offenses.  (*People v. Catlin* (2001) 26 Cal.4th 81, 153 (*Catlin*); *People v. Ochoa* (1998) 19 Cal.4th 353, 410 (*Ochoa*).)  Likewise, though section 1108 states that evidence is "not made inadmissible by Section 1101," we similarly construe this provision to extend to evidence of both uncharged and charged sexual offenses.  (See *Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116 ["Words or phrases common to two statutes dealing with the same subject matter must be construed in pari materia to have the same meaning"].)

Also, in making clear that evidence of prior uncharged sex offenses is not made inadmissible by section 1101(a)'s ban on propensity evidence to prove conduct (see *Falsetta*, *supra*, 21 Cal.4th at p. 911), the qualifying language is not thereby rendered meaningless with respect to evidence of charged sex offenses.  As a general matter, evidence may have multiple purposes and, consequently, may be "admissible . . . for one purpose and . . . inadmissible . . . for another purpose."  (§ 355; see *People v. Pierce* (1969) 269 Cal.App.2d 193, 203.)  Because section 1101(a)'s prohibition against propensity evidence is "absolute where it applies" (*People v. Alcala* (1984) 36 Cal.3d 604, 631), before section 1108 was enacted, evidence admitted to prove the defendant's guilt of a sex offense could *not* be considered as evidence of the defendant's propensity to commit the other charged sex offenses. (See *Falsetta*, *supra*, 21 Cal.4th at p. 915 [§ 1108's "limited exception to the historical rule against propensity evidence"].)  Thus, in

8

authorizing the jury's use of propensity evidence in sex offense cases, section 1108 necessarily extends to evidence of *both* charged and uncharged sex offenses, affirming that such evidence is not "made inadmissible by Section 1101."

### 2. *Section 352 and* Quintanilla

Second, with respect to section 352, defendant relies heavily on the reasoning in *Quintanilla*, *supra*, 132 Cal.App.4th 572, and insists that by incorporating a section 352 analysis, section 1108 effectively distinguishes between charged and uncharged offenses because the former cannot be excluded under section 352. Defendant therefore reasons that the Legislature must have intended section 1108 to apply only to uncharged offenses and asserts that the provision's legislative history supports this interpretation. We disagree.

*Quintanilla* dealt with the parallel provision governing propensity evidence in domestic violence cases (§ 1109).[1] The trial court there modified the pattern jury instruction implementing section 1109 (CALJIC No. 2.50.02), and instructed the jury that it could infer the defendant's criminal propensity to commit charged domestic violence offenses from other charged domestic violence offenses. (*Quintanilla*, *supra*, 132 Cal.App.4th at p. 581.) Relying on our decision in *Falsetta*, *supra*, 21 Cal.4th 903, the *Quintanilla* majority concluded that section 1109 permitted only the admission of *uncharged* offenses. (*Quintanilla*, *supra*, 132 Cal.App.4th at pp. 582-583.) The majority rejected the Attorney General's argument that section 1109's plain terms did not differentiate between charged or uncharged crimes, instead emphasizing that the provision "expressly conditions the admissibility of propensity evidence on the trial court's power to evaluate the evidence under section 352." (*Quintanilla*, *supra*, 132

---

[1] For purposes of the issue presented here, the precise distinctions between section 1108 and section 1109 are not pertinent. (See *People v. Brown* (2000) 77 Cal.App.4th 1324, 1333 ["sections 1108 and 1109 can properly be read together as complementary portions of the same statutory scheme"].)

9

Cal.App.4th at p. 583.) Defendant here advances the same section 352 argument in his briefing. By contrast, the Attorney General maintains that "it is not the express inclusion of the reference to section 352 that matters; rather, it is the availability of the weighing process." We agree with the Attorney General.[1]

Section 1108's legislative history reveals that the legislation was amended after it was introduced to include a specific reference to section 352. (Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended July 18, 1995.) "While § 1108 explicitly supersedes § 1101's prohibition of evidence of character or disposition within its scope of application, it does not supersede other provisions of the Evidence Code, such as normal restrictions in hearsay and the court's authority to exclude evidence presenting an overriding likelihood of prejudice under § 352. [Citations.] [¶] *The amendment adopted at the Judiciary Committee hearing simply makes this point explicit in relation to § 352*." (Assembly Member Rogan, letter of intent re Assem. Bill No. 882 (1995-1996 Reg. Sess.) Aug. 24, 1995, reprinted at 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1108, p. 352, italics added (Rogan letter).)

Rather than imposing an additional hurdle to the admissibility of character evidence, as defendant suggests, the inclusion of section 352 merely makes "explicit" the point that section 1108 does not *supersede* section 352 or other provisions of the Evidence Code. In other words, even if section 1108 did not refer to section 352, the latter still serves as a limitation on the admission of all evidence. (See *Ewoldt*, *supra*, 7 Cal.4th at p. 404 ["to be admissible such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352' "]; see also Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 3 (Assembly Committee analysis) [legislation

---

[1]     We disapprove *People v. Quintanilla*, *supra,* 132 Cal.App.4th 572, to the extent it is inconsistent with the views expressed in this opinion.

10

puts evidence of similar sexual offenses "on the same footing as other types of relevant evidence" not subject to a special exclusionary rule].)

Though recognizing that evidence of the charged offenses may not be excludable under section 352, the Court of Appeal below concluded that nothing precludes a trial court from considering section 352 factors when deciding whether to permit the jury to infer a defendant's propensity based on this evidence. It explained: "Even where a defendant is charged with multiple sex offenses, they may be dissimilar enough, or so remote or unconnected to each other, that the trial court could apply the criteria of section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as evidence that the defendant likely committed any of the other charged offenses." We agree. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 736 ["the ultimate object of the section 352 weighing process is a fair trial"].) We discuss below the trial court's section 352 analysis with respect to the modified instruction. (See *post*, at p. 17.)

In short, we conclude nothing in the language of section 1108 restricts its application to uncharged offenses. Indeed, the clear purpose of section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses. "The propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony." (Assem. Com. analysis of Assem. Bill No. 882, *supra*, p. 2 [purpose according to bill's author]; Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 2 (Senate Committee analysis) [same]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended June 27, 1995, p. 9 [same]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended July 18, 1995, p. 5 [same].) "[C]ase law clearly shows that evidence that [a

11

defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses." (*Falsetta*, *supra*, 21 Cal.4th at p. 915; see *People v. Jones* (1954) 42 Cal.2d 219, 223 ["In the determination of probabilities of guilt, evidence of character is relevant"].)  In light of this clear purpose, we perceive no reason why the Legislature would exclude charged sexual offenses from section 1108's purview, and no indication that it did so in either the text of section 1108 or its legislative history.  Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence.  Indeed, section 1108's legislative history explains that "admission *and consideration* of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible."  (Rogan letter, *supra*, 29B pt. 3B West's Ann. Evid. Code, p. 352, italics added; see *ibid.* ["This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes . . ."].)[1]

In cautioning against the "bootstrapping of verdicts" (see conc. & dis. opn. of Corrigan, J., *post*, at pp. 10, 14) and the possibility that the jury may "simply conclude that because it found the defendant guilty of one count, he must be guilty of the others" (*id*. at p. 2), the concurring and dissenting opinion merely identifies the general concern against allowing a jury to consider propensity evidence in a criminal case.  (See *People v. Manriquez* (2005) 37 Cal.4th 547, 579-580 [modified CALJIC No. 17.02 adequately

---

[1]     Notwithstanding isolated references to "uncharged crimes" and "uncharged sexual acts" in an early analysis by the Senate Committee on Criminal Procedure (see Senate Com. analysis of Assem. Bill No. 882, *supra*, at p. 1), section 1108's legislative history reflects that the Legislature did not consistently use the term "uncharged," and more importantly, the Legislature ultimately did not make such a distinction between "uncharged" and "charged" in the text of section 1108.  Moreover, contrary to the concurring and dissenting opinion's suggestion (see conc. & dis. opn. of Corrigan, J., *post*, at pp. 7-8), the Legislature's references to "other" ("*other* victims" and defendant's commission of crimes "on *other* occasions") may also mean that the case in which a propensity inference will apply involves multiple victims and multiple sex crimes charged against the defendant, as here.

12

addressed defendant's concern jury might base one or more verdicts on multiple murder counts on " 'supposed propensity to commit murder' "].)  However, in a sex offense case, as here, the Legislature has made the careful determination that evidence the defendant committed one or more sex offenses may be properly considered pursuant to section 1108.  (See *ante*, at pp. 11-12; see also *Falsetta*, *supra*, 21 Cal.4th at p. 920 ["evidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses"].)

More to the point, the instruction here (as set out in full below) did not permit the jury to convict defendant of one count based simply on its guilty "verdict" on any other counts.  (Cf. conc. & dis. opn. of Corrigan, J., *post*, at pp. 13-14.)  It is not the verdict itself, but rather the jury's factual finding that defendant has committed a sex offense, that the jury relies on to draw an inference of disposition or propensity.  Specifically, like an instruction based on uncharged sex offenses, the modified CALCRIM No. 1191 explained to the jury that if it decided that defendant had committed a charged sex offense, "from that evidence" it could conclude that defendant had a disposition to commit the other charged sex offenses, and that based on that decision, the jury could also conclude that defendant was likely to and did commit the other charged sex offenses. (See *post*, at p. 16; see also *Reliford*, *supra*, 29 Cal.4th at pp. 1012-1013 [addressing propriety of CALJIC No. 2.50.01; "jury may use 'the evidence of prior sex crimes to find that defendant had a propensity to commit such crimes, which in turn may show that he committed the charged offenses' "].)  Ultimately, the modified instruction affirmed that evidence that the defendant committed a charged offense "is not sufficient by itself to prove the defendant is guilty of another charged offense."

To the extent the Legislature has given greater attention to evidence of uncharged (as compared to charged) sex offenses under section 1108, such focus is not surprising. Shortly before section 1108's enactment, we strongly cautioned that "[e]vidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful

analysis.' " (*Ewoldt*, *supra*, 7 Cal.4th at p. 404; see also *People v. Daniels* (1991) 52 Cal.3d 815, 856 ["this type of evidence can be so damaging"].)  In enacting section 1108, the Legislature recognized that "[g]iven its highly inflammatory nature, uncharged misconduct is admissible after various safeguards are met.  This is done in recognition that when this type of evidence is admitted, the odds of conviction increase dramatically." (Sen. Com. analysis of Assem. Bill No. 882, *supra*, p. 4.) Understandably, the Legislature took special care to ensure that in allowing the jury to consider propensity evidence, section 1108 would withstand scrutiny with respect to uncharged sex offenses.  (See *Falsetta*, *supra*, 21 Cal.4th at p.  917 [" 'By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed . . .' "].)

Allowing a jury to draw an inference of propensity from other charged offenses is also consistent with the use of charged offenses under section 1101, subdivision (b).  As noted, section 1101, subdivision (b), permits the admission of other crimes evidence to establish a material fact like intent, common design or plan, or identity.  (See *ante*, at p. 5.)  We have made clear that juries may consider evidence of other charged offenses for the purposes outlined in subdivision (b), as well as to establish the charged offenses, if the evidence would have been cross-admissible had the charges been tried separately. (*Catlin*, *supra*, 26 Cal.4th at p. 153 ["under Evidence Code section 1101 the jury properly could consider other-crimes evidence in connection with each count, and also could consider evidence relevant to one of the charged counts as it considered the other charged count"]; *Ochoa*, *supra*, 19 Cal.4th at p. 410 ["evidence of each assault could be used under Evidence Code section 1101, subdivision (b), to show defendant's mental state for each other assault, namely his intent"].)  It would be anomalous to permit consideration of such evidence under section 1101 but not under section 1108, when the latter eases the restrictions of the former.  (See also *Isobe v. Unemployment Ins. Appeals Board*, *supra*,

12 Cal.3d at pp. 590-591.) In his separate opinion in *Quintanilla*, Justice Pollak also succinctly explained another incongruity of prohibiting the consideration of charged offenses as character evidence: "Indeed, it is entirely illogical to permit the prosecution to show propensity to commit domestic violence with evidence of prior similar misconduct that was not felt to warrant prosecution in the same case, but to prohibit the use of such evidence when the conduct is deemed sufficiently aggravated to justify a separate charge." (*Quintanilla*, *supra*, 132 Cal.App.4th at p. 586 (conc. opn. of Pollak, J.).)

It is true that section 1108 does not mention drawing a propensity inference from the evidence of charged sex offenses (see conc. & dis. opn. of Corrigan, J., *post*, at pp. 1, 6, 9-10, 18), because, in fact, the statute makes no reference to inferences at all. Nonetheless, despite no mention of inferences, we concluded that pursuant to section 1108, CALJIC No. 2.50.01 properly instructed that jurors may "infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses," and that jurors "may—but are not required to—infer from this predisposition that the defendant was likely to commit and did commit the charged offense." (*Reliford*, *supra*, 29 Cal.4th at pp. 1012-1013 [evidence of uncharged sex offenses].) These "reasonable" and "legitimate" inferences (*ibid.*) are made no less relevant merely because the evidence is based on charged, rather than uncharged, sex offenses. (*Id.* at p. 1013 ["when the evidence is admissible, it may support an inference—as the instruction provides—that the defendant is predisposed to commit the sex offenses"].)

## B. Modified CALCRIM No. 1191

We next address whether the trial court erred in instructing the jury with a modified version of CALCRIM No. 1191. Defendant argues that the modified instruction failed to designate clearly what standard of proof applied to the charged offenses before the jury could draw a propensity inference from them. He insists that without such guidance, a juror could have used any standard of proof, or no standard at

all, to convict him based on even a minimal amount of evidence supporting another sexual offense, thus depriving him of the presumption of innocence. We disagree.

The modified instruction given here provided: "The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge."[1]

Unlike the standard pattern instruction CALCRIM No. 1191 which refers to the use of uncharged offenses, the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no

---

[1]     Although the written version of the modified instruction included this last sentence, it also referred to "specific intent" as follows: "The People must still prove each element of every charge beyond a reasonable doubt and must prove it beyond a reasonable doubt before you may consider one charge as proof *of specific intent* of another charge." (Italics added.) Because the prosecution did not argue that evidence of the other charged offenses could be proof of defendant's specific intent, we, like the Court of Appeal below, have not considered this limitation when evaluating the instruction. In that regard, we reject defendant's contention that the modified instruction included the reasonable doubt standard only with respect to proof of a "specific intent of another charge."

16

risk the jury would apply an impermissibly low standard of proof. (Cf. *Quintanilla*, *supra*, 132 Cal.App.4th at p. 583 [referring to "mental gymnastics" of having jury apply beyond reasonable doubt standard for charged offense but preponderance of evidence standard for purposes of propensity].) Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence.

Defendant also argues that the trial court did *not* undertake a section 352 analysis here before giving the modified instruction. In concluding to the contrary, the Court of Appeal first recognized that the record does not include an express statement by the trial court that it undertook such an analysis. Noting that an express statement is not required (see *People v. Padilla* (1995) 11 Cal.4th 891, 924 (*Padilla*)), the Court of Appeal next inferred the trial court's "implicit weighing," apparently based on the following statement the trial court made to the parties: "[CALCRIM No.] 1191, for the record, I've given you both a copy based on the instruction given in *Wilson*." The Court of Appeal concluded: "The trial court's express reliance on a key case in this area, considered in light of the entire record, allows us to infer that the trial court gave the instruction because it found that all the requirements of the holding in *Wilson*, including a section 352 analysis, had been satisfied." The Attorney General adds that because section 1108 expressly refers to section 352, the trial court "presumably" conducted the requisite section 352 analysis.

We agree with the Court of Appeal that the trial court implicitly conducted a section 352 analysis. "[W]e are willing to infer an implicit weighing by the trial court on the basis of record indications *well short* of an express statement." (*Padilla*, *supra*, 11 Cal.4th at p. 924, italics added.)

17

In any event, any error in failing to conduct such an analysis was harmless. (*Padilla*, *supra*, 11 Cal.4th at p. 925 ["assuming the trial court did *not* evaluate the evidence under Evidence Code section 352, had he done so he would have admitted it in any event"].)  As the Court of Appeal pointed out, although the victims' accounts of their respective attacks had minor differences, their versions were strikingly similar in various respects.  Defendant forced or lured each woman into his car and drove to a residential area, where he forced each woman to submit to sexual acts by pointing a weapon at them. He yelled at each victim not to look at him, and afterwards ordered each out of his car. The evidence was highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice.

In sum, under the facts of this case, the trial court did not err in giving the modified instruction.  We do not decide, however, whether courts should give such an instruction in the future.

## CONCLUSION

Based on the foregoing, we affirm the Court of Appeal's judgment.


**CHIN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**

18

**CONCURRING AND DISSENTING OPINION BY CORRIGAN, J.**

I respectfully dissent from the majority's analysis. The majority concludes Evidence Code section 1108[1] permits the jury to draw a propensity inference from evidence that the defendant committed multiple charged crimes. In my view, such an instruction contradicts long-standing precedent, expands multiple sections of the Evidence Code in ways not contemplated by the Legislature, and sows the seeds for confusion and unintended consequences. Because the error in this case was clearly harmless, however, I concur in the result.

Section 1108 governs the admission of evidence, nothing more. It creates a narrowly crafted exception to the long-standing ban on propensity evidence. Specifically, it provides that evidence of a defendant's sex crimes on other occasions can be admitted in a new sex crime trial to prove the defendant's propensity to commit such offenses. Section 1108 addresses evidence of *uncharged* crimes. It says nothing about the inferences permissible from evidence of *charged* crimes.

A.      *General Principles*

The majority's reasoning fails to distinguish between *evidence* and *inferences* a jury may draw from the evidence. " 'Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." (§ 140.) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (§ 600, subd. (b); see also *People v. Reliford* (2003) 29 Cal.4th

_____

[1]      All statutory references are to the Evidence Code.

1

1007, 1014 (*Reliford*) [describing this distinction].) "[A]n inference is not itself evidence; it is the result of reasoning from evidence." (Assem. Com. on Judiciary, com. on § 600, reprinted at 29B pt. 2 West's Ann. Evid. Code (1995 ed.) p. 4.)

The issues presented here implicate another important distinction about how the jury can reach conclusions from the evidence in a multiple-count case. In the absence of a statute to the contrary, all relevant evidence is admissible at trial. (§ 351.) Unless evidence is admitted for a limited purpose, or against a specific party, evidence admitted at trial may generally be considered for any purpose.[1] A corollary of this rule is that the jury is free to apply its *factual* findings on one count in deciding any other count to which those facts are relevant. (*People v. Beagle* (1972) 6 Cal.3d 441, 456.) However, while the jury is free to apply relevant factual findings across counts, it is admonished that it must return a separate verdict on each count (CALCRIM No. 3515; CALJIC No. 17.02) and must decide each charge "uninfluenced by its *verdict* as to any other count." (*People v. Bias* (1959) 170 Cal.App.2d 502, 510, italics added, cited with approval in *People v. Beagle*, *supra*, 6 Cal.3d at p. 456.) In other words, the jury may not simply conclude that because it found the defendant guilty of one count, he must be guilty of the others. The majority's holding casts aside this established precedent. This aspect of the case is discussed at greater length below. (See, *post*, at pp. 12-14.)

B.    *The Long-standing Rule Against Propensity Evidence*

One example of limited admissibility arises in the context of other crimes evidence. Evidence of a person's *character*, also known as propensity evidence, is inadmissible to prove conduct in conformity with that character trait. (§ 1101, subd. (a) (section 1101(a)); Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann.

---

[1]    If evidence has been admitted for a limited purpose, the jury will be instructed to restrict its consideration of the evidence accordingly. (§ 355.) To this end, CALCRIM No. 303 states: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

Evid. Code (2009 ed.) foll. § 1101, pp. 221-222.)[1]  This is the familiar ban on propensity evidence:  Uncharged conduct generally cannot be admitted to prove the defendant is disposed to commit crimes.  Section 1101(a) codifies this general rule.  Notwithstanding that rule, section 1101, subdivision (b) (section 1101(b)) clarifies that uncharged acts can be admitted for *other* relevant purposes, such as proving motive, opportunity, intent, and so on, but they may not be admitted to prove the defendant had a disposition to commit similar bad acts.  When a defendant's uncharged acts are admitted for a relevant purpose *other* than to support a propensity inference, an instruction is often given that explains this limited purpose to the jury.  (§ 355; CALCRIM No. 375.)

The prohibition on propensity evidence is not merely statutory, however.  In enacting section 1101(a), the Legislature codified a rule of evidentiary exclusion that is at least three centuries old in the common law.  (*People v. Alcala* (1984) 36 Cal.3d 604, 630-631; 1 Wigmore, Evidence (3d ed. 1940) § 194, pp. 646-647; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta*).)  "The ban on propensity evidence dates back to English cases of the seventeenth century."  (*United States v. Castillo* (10th Cir. 1998) 140 F.3d 874, 881.)[2]  Early American courts retained the rule, and it has been enforced throughout our nation's history.  (*McKinney v. Rees*, *supra*, 993 F.2d at pp. 1380-1381; *United States v. Castillo*, at p. 881; see, e.g., *Boyd v. United States* (1892) 142 U.S. 450, 458 [admission of defendants' prior crimes was prejudicial error].)  Today, "[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character

---

[1]  The issue in this case concerns character evidence offered to prove conduct.  Character evidence admitted to attack or support a witness's credibility is addressed in sections 786 through 790, and is not implicated here.

[2]  Reference was made in *Hampden's Trial* (K.B. 1684) 9 How.St.Tr. 1053, 1103, to a forgery case in which the court had excluded evidence of a defendant's prior forgeries.  "Similarly, in *Harrison's Trial*, the Lord Chief Justice excluded evidence of a prior wrongful act of a defendant who was on trial for murder, saying to the prosecution:  'Hold, what are you doing now?  Are you going to arraign his whole life?  Away, away, that ought not to be; that is nothing to the matter.'  12 How.St.Tr. 834 (Old Bailey 1692)."  (*McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1380.)

to establish a probability of his guilt." (*Michelson v. United States* (1948) 335 U.S. 469, 475, fn. omitted; see also *People v. Ewoldt* (1994) 7 Cal.4th 380, 392; *McKinney v. Rees*, at p. 1381 & fn. 2 [listing the 37 states where the rule has been codified and asserting the rule persists in the common law precedents of the 12 other states and the Dist. of Columbia].)

Thus, allowing a defendant to be convicted because of his bad character is generally impermissible not only under California law (§ 1101(a)) and the Federal Rules of Evidence (Fed. Rules Evid., rule 404(b), 28 U.S.C.), but is also "contrary to firmly established principles of Anglo-American jurisprudence." (*McKinney v. Rees*, *supra*, 993 F.2d at p. 1380.)  "The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." (*Michelson v. United States*, *supra*, 335 U.S. at pp. 475-476, fn. omitted.)

C.    *Section 1108(a) Is a Narrow Exception to the Rule Against Propensity Evidence*

In enacting section 1108, the Legislature created a narrow exception to the venerable rule prohibiting the use of uncharged bad acts to prove propensity.  The narrowness of the lawmakers' intention is reflected in both the language of the statute and the legislative history.

1.    *Statutory Language Is Limited to Admitting Evidence of Uncharged Crimes*

Section 1108(a) states that, when a defendant is on trial for a sex offense, "evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Until recently, courts have generally interpreted this language to mean that section 1108(a) permits the *admission* into evidence of a defendant's *uncharged* sex crimes even if this evidence is relevant only to show criminal propensity.  (E.g., *Reliford*,

4

*supra*, 29 Cal.4th at p. 1009; *Falsetta*, *supra*, 21 Cal.4th at pp. 911, 917-919; *People v. Medina* (2003) 114 Cal.App.4th 897, 902; *People v. Britt* (2002) 104 Cal.App.4th 500, 506; but see *People v. Wilson* (2008) 166 Cal.App.4th 1034 [approving instruction that invited the jury to infer specific intent from findings on the charged offenses].)

Although section 1108 does not expressly state that evidence of the other sex offense to be admitted must relate to an *uncharged* crime, this conclusion is fairly implied from its wording. The statute states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of *another* sexual offense or offenses is *not made inadmissible by Section 1101*, if the evidence is not inadmissible pursuant to section 352." (§ 1108, subd. (a), italics added.) The majority's analysis relies heavily on the absence of language limiting the provision to "uncharged" offenses and the dictionary definition of "another." But, read in context, the word "another" clearly suggests the statute is referring to offenses "other" than those for which the defendant is currently on trial. The whole point of section 1108 is to make admissible a certain type of "bad act" evidence that is otherwise inadmissible under section 1101. Evidence pertaining to the crimes for which the defendant is on trial is admissible in its own right and not "made inadmissible by Section 1101."

Despite this clear limitation, the majority insists section 1108 "necessarily extends to evidence of *both* charged and uncharged sex offenses" (maj. opn., *ante*, at p. 9) because the Legislature intended to authorize reliance on propensity evidence with respect to sex offenses, and charged offenses are just as relevant as uncharged ones. This argument misconstrues the difference between evidence and inferences based on evidence. Section 1108 authorizes the admission of uncharged sex crime evidence, even when its only relevance is to show propensity. As a result, the statute necessarily allows a propensity inference to be drawn from evidence of uncharged sex crimes. (See *Reliford*, *supra*, 29 Cal.4th at pp. 1014-1015.) However, nothing in the language of section 1108 sanctions or encourages the drawing of a propensity inference from *all* evidence of sex crimes, as the majority assumes. The statute does not even mention the inference at issue here.

The statute also requires that the other crimes evidence "is not made inadmissible by Section 1101, *if the evidence is not inadmissible pursuant to Section 352*." (§ 1108, subd. (a), italics added.) The significance of this reference to section 352 is discussed at pages 10-12, *post*.

Finally, the Legislature's intent that section 1108 govern the admission of *uncharged* misconduct is clear from subdivision (b), which requires that the prosecution disclose other crimes evidence to the defense before trial. Subdivision (b) makes no sense when the evidence at issue relates to charged offenses. Pretrial discovery rules already require disclosure of evidence pertaining to the charged crimes. When applied to evidence of charged offenses, subdivision (b) is superfluous. We generally avoid interpretations that render any part of a statute superfluous. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1030.) The majority does not attempt to resolve this problem.

> 2.    *Legislative History Supports a Limited Reading of Section 1108(a)*

In addition to the statutory language, the legislative history uniformly shows that the Legislature was concerned with admitting evidence of *uncharged* sex crimes when it enacted section 1108. For example, an analysis prepared by the Senate Committee on Criminal Procedure described the "key issue" presented by Assembly Bill No. 882 as follows: "Under current law evidence that a defendant has committed *other uncharged crimes*, for which the defendant has not been convicted, is generally inadmissible to prove a specific crime. [¶] Should an exception to that rule be made to allow the introduction of evidence of *uncharged* sexual acts to show that the defendant committed the sexual offense in question?" (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, pp. 1-2, italics added, capitalization omitted.) In the same report, the bill's author explained that, under current law, evidence the defendant had committed sexual offenses "against *other* victims is not necessarily admissible in a trial where the defendant is being accused of a *subsequent* sexual offense." (*Id*. at p. 3, italics added, capitalization omitted.)

6

A floor analysis from the Assembly was in accord. It stated that the bill would establish a general rule of admissibility in sex crime cases "for evidence that the defendant has committed offenses of the same type *on other occasions*." (Assem. Com. on Public Safety, Off. of Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 1, italics added.) The author also described the bill as establishing "a presumption of admissibility for evidence that the defendant has committed similar crimes *on other occasions*." (*Id*. at p. 2, italics added.) In these statements, "other" logically means "other than the case for which the defendant is on trial."

There is more. In a Senate Judiciary Committee analysis, the question was raised whether "the proposed use of character evidence of the defendant's commission of *another* sexual offense to prove the commission of the *charged* offense [should] be limited to other similar sexual offenses." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended June 27, 1995, p. 3, italics added, capitalization omitted.) In the same report, the bill's author was quoted as saying that, under current law, evidence the defendant had committed sex crimes " 'against *other victims*' " was often not admissible, and the bill would " 'amend the Evidence Code so as to establish, in sexual offense actions, a presumption of *admissibility* for evidence that the defendant has committed similar crimes *on other occasions*.' " (*Id*. at p. 9, italics added.) These repeated references to inadmissibility of other crimes evidence make no sense if understood to refer to *charged* crimes because evidence of charged offenses is clearly admissible.

This sampling of the available legislative history consistently shows that section 1108 was intended only to permit the admission of uncharged offenses. Significantly, nothing in the available legislative history for Assembly Bill No. 882 suggests the Legislature ever contemplated the use of section 1108 to support an instruction that invites jurors to draw a propensity inference from evidence pertaining solely to charged sex crimes.

7

Moreover, the contemplated instruction does not serve the legislative purpose behind section 1108. "Available legislative history indicates section 1108 was intended in sex offense cases to relax the *evidentiary* restraints section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*Falsetta*, *supra*, 21 Cal.4th at p. 911, italics added.) Because of the serious and secretive nature of sex crimes, the general policy of exclusion is outweighed by a more pressing need to permit admission of evidence that would otherwise be excluded. (*Ibid.*) But the case before us does not involve the admission of otherwise impermissible evidence. Rather, the instruction here invites the jury to draw a specific inference from evidence that was admissible without regard to section 1108. An inference is not evidence. (§ 600.)

D.     *Extending Section 1108(a) to Permit a Propensity Inference for Charged Crimes Conflicts with Fundamental Principles*

Section 1108 is a narrow rule authorizing the admission of evidence of the defendant's uncharged sex crimes, subject to section 352, even if those crimes are only relevant to show the defendant's propensity to commit sex crimes.

The present case does not concern the admission of evidence, nor does it concern evidence of a defendant's uncharged sex crimes. The question here is whether the jury should be instructed that it can infer, from a finding that the defendant committed one of the charged sex crimes, that he has a propensity to commit such offenses and, thus, may have committed the other sex crimes for which he is on trial. Section 1108 simply does not address this question. Although section 1108 may reflect the Legislature's increased willingness to tolerate propensity evidence in the context of sex crimes, the statute was carefully crafted to permit the admission of evidence of uncharged crimes subject to the balancing test of section 352. In light of the historically grounded, constitutionally significant rule against propensity evidence (see *Falsetta*, *supra*, 21 Cal.4th at pp. 914-915), this court is not free to expand section 1108's exception to this rule beyond its narrow boundaries. The majority's analysis violates the canon that statutory exceptions

8

such as the one set forth in section 1108 must be narrowly construed.  (*City of National City v. Fritz* (1949) 33 Cal.2d 635, 636.)

Moreover, the inference the challenged instruction encourages is not a permissible one.  The jury is generally forbidden from inferring criminal propensity from the existence of multiple charges.  Although section 1108(a) implicitly allows the jury to infer propensity from evidence that the defendant committed uncharged sex crimes, it does not abrogate the broader rule that a *conviction* on one count cannot be relied upon to convict on other counts.  Section 1108 says nothing about a propensity inference drawn from charged crimes.  Because it amounts to a bootstrapping of verdicts in multiple-count cases, such an inference remains improper.

1.     *A Propensity Inference Based on Charged Crimes Lacks the Safeguard of Section 352*

In *Falsetta*, *supra*, 21 Cal.4th 903, this court considered a due process challenge to section 1108.  We observed that, "[f]rom the standpoint of historical practice," the general rule against admitting propensity evidence was "unquestionably . . . one of long-standing application." (*Falsetta*, at p. 913.)  Given recent developments relaxing this rule in the context of sex offenses, we found it "unclear whether the rule against 'propensity' evidence *in sex offense cases* should be deemed a fundamental historical principle of justice" not subject to legislative alteration. (*Id*. at p. 914.)  However, even assuming the rule could be considered fundamental from a historical perspective, we concluded section 1108's "limited exception" to it did not offend due process because section 352 would prevent unfairness to the defense.  (*Falsetta*, at p. 915.)

We described section 352 as "a safeguard that strongly supports the constitutionality of section 1108" (*Falsetta*, *supra*, 21 Cal.4th at p. 916) and concluded, "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." (*Falsetta*, at p. 917.)  " 'By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an

9

undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (. . . § 352.)  This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.]  *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.*'  ([*People v.*] *Fitch* [(1997)] 55 Cal.App.4th [172,] 183, italics added.)" (*Falsetta*, at pp. 917-918.)

Clearly, the trial court's broad discretion to exclude propensity evidence under section 352 was critical to our holding that section 1108 was constitutional.  (*Falsetta*, *supra*, 21 Cal.4th at pp. 917-918.)  However, section 352 has no logical application to the issue in this case, which is whether the jury can be instructed to draw a propensity inference from evidence properly admitted to show that the defendant committed the charged offenses.  As noted, section 352 concerns only the admission of evidence.  It allows the court to exclude relevant evidence if it is unduly prejudicial, time consuming, or confusing.  The familiar section 352 balancing test can be easily applied in deciding whether to admit evidence of uncharged offenses; however, it provides no basis to exclude otherwise competent and appropriate evidence of the *charged* offenses.

The majority opinion attempts to graft a section 352 safeguard onto its holding by stating that trial courts should " 'apply the criteria of section 352' " in determining whether to instruct the jury to draw a propensity inference from the charged offenses. (Maj. opn., *ante*, at p. 11.)  The opinion offers no guidance on how this analysis should be conducted, and there is none to be found elsewhere.  Conducting a section 352 analysis to decide whether to give a jury instruction is unprecedented.  This novel expansion of the analysis required in deciding upon instructions is created because the majority is extending section 1108 to allow something the Legislature never contemplated.

Like sections 1101 and 1108, section 352 specifically addresses the discretion of the trial court to exclude relevant evidence.  It confers this authority when the proffered evidence would (1) require undue consumption of time, (2) create a substantial danger

10

that the jury might be confused or misled, or (3) create a substantial danger of undue prejudice. (§ 352.) The first two factors authorize a trial court to exclude evidence of uncharged offenses entirely if it poses a substantial risk of undue confusion or time consumption. But these factors are necessarily inapplicable when the evidence is relevant and admissible to prove a charged offense. Moreover, at the jury instruction stage, presentation of the evidence will have concluded. Unduly confusing or misleading evidence relating to the charges will have been excluded under normal application of the rules of evidence.

All that would remain of a purported section 352 analysis would be the question of undue prejudice. Yet the majority does not explain how a defendant could possibly be prejudiced by a correct explanation of the applicable law, which is the only question before the court in considering proposed jury instructions. The majority gives no guidance on how a prejudice analysis should be performed in such a context. What factors should the court rely upon in deciding whether to give or reject a propensity instruction? The majority is silent.

Although section 352 can operate as a reasonable safeguard to prevent unfairness in the context of *admitting* evidence of uncharged crimes, it cannot serve the same purpose in the context of an *instruction* that encourages the drawing of a propensity inference from charged crimes. Without the safeguard of section 352, or a reasonable means of assessing undue prejudice to the defendant, it is questionable whether a propensity instruction like the one here is consistent with due process.

2. *A Propensity Inference for Charged Crimes Improperly Bootstraps Verdicts on Multiple Counts*

The majority's analysis elides an important distinction between the cross-admissibility of evidence on multiple counts and the jury's duty to decide each count separately, uninfluenced by its *verdict* on any other count.

A propensity instruction is not needed to permit the jury to consider evidence across multiple counts if the evidence is relevant to prove a fact at issue in other counts. Jurors can consider all the evidence admitted in a case to the extent that evidence is

11

relevant to prove any count. If a fact is relevant in deciding multiple charges, the jury can consider the admitted evidence with regard to each count that fact has "any tendency in reason" to prove. (§ 210 [defining relevant evidence].)

Whereas the jury is generally free to apply evidence admitted on one count when it is relevant to other charges, courts in this state have long held that the jury may not allow its *verdict* on one count to influence its determination about whether the other counts have been proven. In *People v. Magee* (1963) 217 Cal.App.2d 443, 468, the court found no error in an instruction telling the jury to "consider the evidence applicable to each offense separately from the other offenses and state its finding as to each count uninfluenced by its verdict as to any other count or defendant." Likewise, in *People v. Bias*, *supra*, 170 Cal.App.2d at page 510, the court approved of a CALJIC instruction telling the jury to consider the evidence on each alleged offense as if each count were the only accusation and make findings on each count uninfluenced by its *verdict* as to any other count. This was a proper statement of law because "the instruction does not tell the jury to disregard its findings on the *facts* as regards any count in determining any other count in which those facts are relevant. It merely tells the jury that if based on those findings it finds that the crime charged in a particular count was or was not committed, such finding should not influence the jury in determining whether or not the facts so found proved the other crimes charged." (*People v. Bias*, at p. 510, italics added.) We cited *People v. Bias* with approval in *People v. Beagle*, *supra*, 6 Cal.3d at page 456, noting that an instruction telling the jury to decide each count separately, uninfluenced by its *verdicts* on other counts, would not have allowed the jury to disregard factual findings in determining other counts to which those facts were relevant.

Pattern jury instructions today are consistent with this settled law. CALJIC No. 17.02 states: "Each Count [other than Count[s] . . . ] charge[s] a distinct crime. You must decide each Count [other than Count[s] . . . ] separately. The defendant may be found guilty or not guilty of [any or all] [either or both] of the crimes charged [in Count[s] . . . ]. Your finding as to each Count must be stated in a separate verdict." CALCRIM No. 3515 states: "Each of the counts charged in this case is a separate crime

12

[except for Counts . . . ].  You must consider each count separately and return a separate verdict for each one [except for counts . . . ].”

The instruction the majority now approves invited the jury to do exactly what these instructions, and 50 years of precedent, forbid.  The modified version of CALCRIM No. 1191 given here told the jury, in part:  “If you *decide* that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and *based on that decision also conclude* that the defendant was likely to and did commit the other offenses of rape and sodomy charged.”  (Italics added.)  Thus, if the jury reached a particular “decision,” or verdict, as to one of the charges, the instruction told the jury it could rely on this decision to conclude “that the defendant was likely to and did commit” the other charged offenses.  The instruction sanctions a bootstrapping of verdicts we have long considered improper.  For the jury to apply a verdict against the defendant on one count to conclude the defendant was likely to commit, and *did* commit, the other counts violates the well-settled rule that the jury must decide each count uninfluenced by its verdict on other counts.[1]

E.    *A Propensity Instruction Is Unnecessary and Potentially Confusing*

In *Reliford,* we approved the giving of CALJIC No. 2.50.01 to explain how jurors are to evaluate evidence of uncharged sexual misconduct admitted pursuant to section 1108.  (*Reliford*, *supra*, 29 Cal.4th 1007.)  A similar instruction advises jurors how to consider other crimes evidence that was admitted for a noncharacter purpose pursuant to

---

[1]    Instructing the jury to draw a propensity inference from charged crimes also runs counter to our joinder jurisprudence.  The potential prejudice that can result from the presentation of evidence on multiple charged crimes is generally assessed at the joinder and severance stage of proceedings.  The joinder and severance rules presuppose that a jury can legitimately consider evidence of all counts in deciding each count.  In ruling on a severance motion, the court must determine whether trial of the various charges together will create a risk of undue prejudice.  (*People v. Ruiz* (1988) 44 Cal.3d 589, 605.)  The majority provides no guidance as to whether, in cases alleging multiple sex crimes, this analysis will now have to consider the potential prejudice from a “propensity instruction” like the one given here.

13

section 1101(b). (CALCRIM No. 375; CALJIC No. 2.50.) These instructions are valid and necessary because they explain the *limited purpose* for which evidence of a defendant's other crimes has been admitted. Section 1101(b) clarifies that evidence of other crimes may be admitted for a purpose other than proof of the defendant's character. An instruction is needed to advise the jury of the permissible purpose, such as intent, motive, or identity, for which the evidence has been admitted. Similarly, section 1108 describes a narrow exception to the general rule against admitting character evidence. When extensive evidence of a defendant's prior or subsequent bad conduct has been presented, the jury needs to hear why this potentially inflammatory, collateral evidence is relevant and how it may properly be considered in deciding whether the defendant committed the charged crimes.

The instruction here is different. Evidence pertaining to the charged crimes is not admitted for a limited purpose, and no instruction is needed to tell the jury of its possible relevance. Evidence that the defendant committed the charged crimes is, by definition, relevant and admissible. This instruction draws the judge into the adversarial process by encouraging the jury to draw a specific, and generally prohibited, conclusion from the evidence. The case against a defendant is obviously strengthened when the evidence shows he committed a series of similar crimes. This holds true for any type of criminal trial, not just sex offenses. The prosecution's case is stronger in a multiple-count case *not* because the jury can, or should be encouraged to, judge the defendant based on his character, but rather because repeated instances of the same behavior logically tend to show that the defendant acted with a plan or harbored a certain mental state when committing the crimes in question. As we explained in *People v. Ewoldt*, *supra*, 7 Cal.4th 380, 402, " '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.]"

14

The majority opinion contends it would be anomalous for us to require that a "propensity instruction" be given on request for uncharged offenses (see *Falsetta*, *supra*, 21 Cal.4th at p. 924) but not permit the same instruction for charged offenses because both are equally relevant to show a propensity to commit sex crimes. There is no anomaly. An instruction explaining the proper use of evidence admitted for a limited purpose under a narrow statutory exception is analytically and qualitatively different from an instruction inviting the jury to draw a specific, typically impermissible, inference from evidence that was admitted for all purposes.

An example from outside the sex offense context illustrates the point: When a defendant's similar uncharged conduct is offered under section 1101(b), the court will instruct the jury that evidence of the uncharged offense has been offered for a limited purpose and may only be considered in support of an inference related to that limited purpose. (CALCRIM No. 375.) If other similar offenses have been *charged*, does the court also have to instruct that evidence generally admitted to prove the charged offenses can be used to support an inference of intent with respect to the other charged offenses? If the charged offenses would not be similar enough to be admissible under *People v. Ewoldt*, *supra*, 7 Cal.4th 380, would the defense be entitled to an instruction limiting how this otherwise admissible evidence should be used? We have never so held, in either case.

Moreover, the majority's holding will potentially create confusion and inconsistent results. For example, suppose the defendant is on trial for five murders and five rapes. Five victims were each raped and then murdered in a similar manner. A propensity instruction like the one at issue here tells the jury that, if it decides the defendant committed one of the charged rapes, it can infer he had a propensity to commit rape and thus may have committed the other charged rapes. The giving of such an instruction raises problems, however, because a propensity inference is *impermissible* in deciding the multiple murders. In such a case, one could argue that a propensity-to-rape instruction would make the jury more inclined to draw a forbidden propensity inference with respect to the charged murders. Should the defendant be entitled to an instruction that directs the

15

jury *not* to infer a propensity to murder from those charges?  If so, might not defendants be entitled to the same instruction in *any* case involving multiple charges of similar, nonsexual offenses?  Again, we have never so held.

The issue becomes even more complicated if the prosecution has also presented evidence of *uncharged* misconduct under section 1101(b) or 1108.  CALCRIM Nos. 375 and 1191 explain that the jury need only find that the defendant committed the uncharged acts by a preponderance of the evidence before it can rely on the uncharged acts to support a specific inference.  If the same preponderance standard is applied to charged offenses, as it was in *People v. Quintanilla* (2005) 132 Cal.App.4th 572, 581, there is a serious risk of confusion.  Requiring the jury to apply two standards of proof to evidence of the *same crime* would inevitably lead to confusion and could potentially erode the presumption of innocence.  (See *id*. at p. 583.)  If a reasonable doubt standard is applied to the charged offenses instead, as was the case here, the instructions would require the jury to juggle two separate standards of proof for the same type of evidence—a preponderance standard for uncharged misconduct, and a reasonable doubt standard for misconduct that has been charged—before they could draw the inferences in question.  It is difficult to imagine that a juror would *not* be confused by such a set of instructions.

This confusion is entirely avoidable.  Juries have never been instructed about the reasonable inferences they can draw from the relevant facts of the charged crimes.  There is no need for them to be so instructed in cases involving multiple charged sex offenses.  The instruction is not necessary to explain the relevance of evidence admitted for a limited purpose, because the evidence is *not* limited.  Further, the inference the instruction encourages is not authorized by section 1108.  The instruction risks confusing the jury and, in some circumstances, prejudicing the defendant.  It will set a precedent for a similarly confusing instruction under section 1101(b), and may require clarifying instructions for the defense in cases involving a mixture of sex crimes and other offenses.  Inferences arising from the charged offenses are best considered at the joinder and severance stage of trial, not as part of the jury's charge.  For these reasons, I believe the instruction is seriously flawed and should not be given.  Indeed, courts and advocates

16

should note that the majority was careful to point out the limits of its holding. It expressly did *not* decide whether an instruction like the one here should be given in future cases.

However, because the case against this defendant was particularly strong, the error was harmless. In addition to testimony from each of the five victims, DNA testing confirmed defendant's involvement in four of the rapes. Strong similarities among the crimes also mitigated prejudice from the instruction, because the jury could have properly considered these similarities for noncharacter purposes, as we discussed in *People v. Ewoldt*, *supra*, 7 Cal.4th at page 402. On this record, it is not reasonably probable that the defendant would have obtained a more favorable result absent the propensity instruction. (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

CORRIGAN, J.

I CONCUR:
WERDEGAR, J.

17

**CONCURRING AND DISSENTING OPINION BY LIU, J.**

The court holds that Evidence Code section 1108 applies to charged as well as uncharged offenses. (Maj. opn., *ante*, at pp. 7-15; further statutory references are to the Evidence Code.) However, neither the language nor the legislative history of section 1108 supports this construction. (See conc. & dis. opn. of Corrigan, J., *ante*, at pp. 5-8.) Section 1101 and, in turn, section 1108 govern whether evidence is admissible or inadmissible. These statutes do not govern how evidence that has been properly admitted — here, evidence of charged sex crimes — may be used by a jury. As Justice Corrigan explains: "The present case does not concern the admission of evidence, nor does it concern evidence of a defendant's uncharged sex crimes. The question here is whether the jury should be instructed that it can infer, from a finding that the defendant committed one of the charged sex crimes, that he has a propensity to commit such offenses and, thus, may have committed the other sex crimes for which he is on trial. Section 1108 simply does not address this question." (Conc. & dis. opn. of Corrigan, J., *ante*, at p. 8.) I agree with Justice Corrigan that the trial court erred in instructing the jury with a modified version of CALCRIM No. 1191 but that the error was harmless in this case.

Even if the court were correct that section 1108 applies to charged offenses, I see no convincing basis to conclude from the record here that the trial court "implicitly conducted a section 352 analysis." (Maj. opn., *ante*, at p. 17; see § 352 [authorizing courts to exclude evidence upon weighing its probative value against its prejudicial impact].) The trial court's statement — "[CALCRIM No.] 1191, for the record, I've given you both a copy based on the instruction given in *Wilson*" — is too slender a reed to support an inference that the trial court found all the requirements in *People v. Wilson*

1

(2008) 166 Cal.App.4th 1034, including a section 352 analysis, to have been satisfied. Although we said in *People v. Padilla* (1995) 11 Cal.4th 891 that "we are willing to infer an implicit weighing by the trial court on the basis of record indications well short of an express statement," those indications in *Padilla* included the prosecution's pretrial brief stating "that an Evidence Code section 352 weighing was required as a condition of admitting the evidence" and defense counsel's oral argument "[taking] the position that what he referred to as the 'extreme prejudice' likely to follow on the admission of such evidence should bar its use." (*Id.* at p. 924.) The record in *Padilla*, we said, "signal[ed] that counsel and the trial court had in mind the appropriate analytic framework for passing on the admissibility of the evidence, that the court was therefore aware of the need to weigh the evidence under section 352, and thus that it must have done so." (*Ibid.*) Even with those signals, we said in *Padilla* that "[t]he scantiness of the transcript makes the issue a close one." (*Id.* at p. 925.)

In this case, the record offers even less to indicate that the court conducted a section 352 analysis. The trial court's reference to *Wilson* indicates only that the modified instruction was "based on the instruction given in *Wilson*" and not that the trial court conducted a section 352 analysis. That statement was preceded by two brief discussions outside the presence of the jury. During voir dire, the prosecutor advised the court and defense counsel that she would request a modified version of CALCRIM No. 1191. During the presentation of the defense case, the court stated that the prosecutor asked that the preponderance of the evidence standard of proof in CALCRIM No. 1191 be replaced by proof beyond a reasonable doubt. The prosecutor added that the words "uncharged or prior" also should be changed to "other charged offenses" so that the modified instruction would "make sense." Section 352 was not discussed, and the record contains no briefs or other material bearing on this issue.

The court's unfounded inference that the trial court actually conducted a section 352 analysis weakens the crucial protective role of that analysis in the statutory scheme. In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), we recognized that the use of

2

propensity evidence implicates a serious danger of undue prejudice. (*Id.* at p. 915, citing *People v. Alcala* (1984) 36 Cal.3d 604, 631 ["Such evidence 'is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much.*' " (italics added in *Alcala*)] and *Michelson v. United States* (1948) 335 U.S. 469, 476 [propensity evidence tends to "overpersuade" the jury].) In the face of that concern, we considered in *Falsetta* whether section 1108 violates the constitutional principle of due process.

We concluded that "in light of the substantial protections afforded to defendants in all cases to which section 1108 applies, we see no undue unfairness in its limited exception to the historical rule against propensity evidence." (*Falsetta*, *supra*, 21 Cal.4th at p. 915.) Central to our analysis was section 1108's language stating that other-sex-crimes evidence "is not made inadmissible by Section 1101, *if the evidence is not inadmissible pursuant to Section 352.*" (§ 1108, subd. (a), italics added.) We said that even as "trial courts may no longer deem 'propensity' evidence unduly prejudicial per se," they "must engage in a careful weighing process under section 352." (*Falsetta*, at pp. 916-917.) The requirement that trial courts undertake a careful section 352 analysis was critical, we held, to saving section 1108 from constitutional doubt. (*Falsetta*, at p. 917 ["In summary, we think the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge."]; *id.* at p. 916 ["[W]e believe section 352 provides a safeguard that strongly supports the constitutionality of section 1108."]; *id.* at p. 918 [" '*With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.*' [Citation.]" (italics added in *Falsetta*)].) The vital protective function of section 352 analysis, repeatedly emphasized in *Falsetta*, requires a more specific indication than is present on the record here that the trial court actually conducted the required analysis.

I agree with Justice Corrigan that absent a statutory exception, the general rule against propensity evidence informs the proper use of evidence of charged offenses in a

3

multiple-count case. (See conc. & dis. opn. of Corrigan, J., *ante*, at p. 15 [inferring criminal propensity from evidence of a charged offense in a multiple-count case is "typically impermissible"].) Courts have generally held that a trial court has no duty to instruct the jury *sua sponte* in a multiple-count case that evidence of one charged offense may not be considered as evidence of general criminality tending to prove a defendant's guilt of another charged offense. (E.g., *People v. Holbrook* (1955) 45 Cal.2d 228, 233; *People v. Thornton* (1979) 88 Cal.App.3d 795, 803-804; *People v. Jackson* (1975) 45 Cal.App.3d 67, 70.) But it remains an open question whether a defendant charged with multiple nonsexual offenses may be entitled to such an instruction upon request. It also remains open whether a defendant charged with multiple sexual offenses may be entitled to such an instruction upon request if he is able to show that drawing a propensity inference from evidence of a charged offense would be unduly prejudicial and thus improper in light of "such as factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, [and] its similarity to [another] charged offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

LIU, J.

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Villatoro
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 194 Cal.App.4th 241
**Rehearing Granted**

_____

**Opinion No.** S192531
**Date Filed:** July 30, 2012
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** William N. Sterling

_____

**Counsel:**

Edward J. Haggerty, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka and Lance E. Winters, Assistant Attorneys General, Lawrence M. Daniels, Chung L. Mar and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Edward J. Haggerty
20955 Pathfinder Road, Suite 100
Diamond Bar, CA  91765
(626) 912-5551

William H. Shin
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2038